Irving S. Aronin, J.
In this death action, the jury rendered a verdict in favor of the plaintiff and the defendants move to set the verdict aside and for the dismissal of the complaint contending, inter alia, that as a matter of law the complaint fails to state a cause of action as the lease and sublease herein did not create a third-party beneficiary contract entitling plaintiffs to a recovery.
This is at issue with plaintiff’s contention that the third-party beneficiary rule spelled out in the field of nonpublic contracts (Lawrence v Fox, 20 NY 268) applies to this public contract between the New York State Thruway and the Chevron Oil Co. which was assigned by Chevron Oil Co. to the defendant Ettinger. For the purpose of simplification, the prime lease will be referred to herein. The facts are as follows:
On August 2, 1970 at approximately 3:00 p.m. plaintiff’s *652 decedent was operating his motor vehicle on the New York State Thruway when his automobile became disabled with a flat tire at or about the vicinity of Mile Post 26 near the Village of Sloatsburg, New York. He was in the company of his wife and 12-year-old son.
Approximately one hour later a New York State trooper stopped and radioed to obtain assistance for the decedent by requesting a service truck from the defendant Ettinger who had the exclusive franchise for service along the Thruway at this location as the assignee of the defendant Chevron. This call was noted in the disabled vehicle log maintained by the New York State Thruway Authority. The trooper testified that when he made this call he was advised that some officer had previously reported this disabled vehicle. Calls for assistance were made by State troopers on two other occasions up to approximately 6:00 p.m., and each time decedent was advised that help would be forthcoming in approximately 20 minutes.
The day this occurrence took place was extremely hot with the temperature throughout the afternoon in the 90’s. After waiting up to approximately 6:30 p.m. decedent himself undertook to change the tire.
Decedent, an accountant, 50 years old, was described as a heavy man, unaccustomed to physical exertion, who had never before changed a flat tire. In undertaking this task, decedent displayed little familiarity with the procedure and on several occasions the jack slipped. After much effort, he succeeded in changing the tire. However, during the process, decedent became very ill, pale, and experienced chest pains to the point that he was unable to place the disabled tire in the trunk of his automobile, which task was performed by his wife and son.
In pain and in obvious physical distress, decedent, his wife and son entered the automobile, drove a short distance to a service area, where decedent was removed from the car in a near collapsed state. An ambulance was called and decedent was removed to a hospital where he became comatose and his condition was diagnosed as a myocardial infarction. He succumbed approximately 20 days later.
The evidence disclosed that calls for road service for other vehicles in distress received subsequent to the calls made on behalf of the decedent were responded to by the defendant Ettinger.
The proof further showed that the troopers who called on behalf of the decedent were advised of a service truck number *653 that was being dispatched to assist the decedent, but no service truck ever responded, nor was a truck ever dispatched to assist the decedent.
Received in evidence were the logs of the New York State Thruway Authority, the contracts between the State Thruway Authority and Chevron, and the contract between Chevron and Ettinger.
At the trial it was stipulated that the primary action between the plaintiff and the defendants was to be tried by court and jury and that the third-party action of Chevron against Ettinger should be decided by the court.
The complaint sets forth causes of action in contract and in negligence. The cause of action relating to negligence was dismissed and the court ruled, as a matter of law, that a third-party beneficiary contract existed entitling the plaintiff to standing before the court. Submitted to the jury were the issues of breach of contract, if any, proximate cause, foreseeability and damages. The jury rendered a verdict in favor of the plaintiff in the sum of $360,000 for wrongful death and $10,000 for pain and suffering. Presented for reconsideration in this posttrial motion is the court’s original determination that there existed a valid third-party beneficiary contract as a matter of law, and the jury’s finding that there was a breach of such contract that proximately resulted in decedent’s death.
It is well settled that a municipality or an agency or an authority of a municipality may enter into a contract for the benefit of a third party (10 NY Jur, Contracts, § 249, p 176; International Ry. Co. v Rann, 224 NY 83). While no case depicting a similar fact pattern in the case sub judice has come to light, there are, however, sufficient authorities to establish that for a public contract to be cast as one for the benefit of third parties, two essential elements are requisite. The first is that the municipality or authority must owe the beneficiary a legal duty in a primary sense and not incidentally, and the second is that the contract must clearly intend to have the members of the general public as third-party beneficiaries.
In New York Jurisprudence (10 NY Jur, Contracts, § 249, p 176, supra; citing, inter alia, New York Pneumatic Co. v Cox Constr. Co., 201 App Div 33, affd 235 NY 567; Little v Banks, 85 NY 258, 263), the rule as to third-party beneficiaries of a public contract is stated thusly: "The rule permitting a third-party beneficiary to sue upon a contract has been applied to *654 certain public contracts. Thus, contractors with the state or a municipality who assume, for a consideration received from the sovereign power, by covenant expressed or implied, to do certain things, are liable in case of neglect to perform such covenant, to a private action in a suit of a private party injured by such neglect, although the state or municipality might not be liable to such party, and such contract inures to the benefit of the individual who is interested in its performance. This rule has been based upon the theory that the contractor, having received a consideration from the sovereign power for performing a public duty, is liable for neglect to discharge that duty to anyone who thereby sustains special damages.”
In Moch Co. v Rensselaer Water Co. (247 NY 160, 164) the court observed: "The benefit, as it is sometimes said, must be one that is not merely incidental and secondary. * * * It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost. The field of obligation would be expanded beyond reasonable limits if less than this were to be demanded as a condition of liability.”
In the case at bar, the defendants presented no evidence or testimony, but relied solely on the subject contract to negate the third-party beneficiaries rule. Reanalysis of the contract compels the court to adhere to its original determination that there existed a primary legal duty owed to the decedent; that it was intended by the contracting parties that persons situated such as the decedent be considered third-party beneficiaries, and hence a valid third-party beneficiary contract existed as a matter of law.
In American Jurisprudence (17 Am Jur 2d, Contracts, § 302, p 725), it is stated: "The courts generally have been more liberal in applying the third-party beneficiary rule to public contracts than to private contracts.” (Freigy v Gargaro Co., 223 Ind 342; Seaver v Ransom, 224 NY 233.)
To the extent here material, the contract recites numerous duties and obligations, including the maintenance of liability insurance running directly to and for the benefit of patrons such as decedent, that manifestly bespeaks of an assumption to make reparations directly to the public. The contract specifies that the public is the recipient or beneficiary of such services and outlines the duties and obligations undertaken by *655 the franchisee in servicing patrons. It is inescapably implicit that the interest, therefore, is primary and not incidental.
As to the purposes and intendment of the contract and the recognition by the Thruway Authority of its duty owing to the public and patrons of the roadway, one need only look to the contractual provisions. Intent can only be derived from the purpose or the formulated design of a contract. It must resolve to do a particular act or accomplish a specific aim, and the contract herein specifically refers to patrons being the beneficiaries of services that must be supplied by the franchisee. This is strongly and fully expressed by the almost unilateral control retained by the authority in the event a franchisee deviated from the performance of duties to the patrons under the terms of the contract.
Paragraph 4(b) gives the authority the right to terminate the lease on 30 days’ written notice if: "in the authority's sole judgment, the effect of the operator’s policies or practices in the management of any of the leased premises, including, but not limited to, policies affecting health, prices, fairness to patrons, cleanliness, maintenance, service, courtesy, promptness and efficiency, safety, personnel and patron welfare and satisfaction, is detrimental to the authority in the fulfillment of its legal duties to the people of the State of New York, its patrons or its bondholders.”
There are numerous references in many of the paragraphs of the contract that pertain to the patrons. In fact, there are at least 27 specific references to the services, duties and obligations undertaken on behalf of the patron. Paragraph 11, undoubtedly the most important clause concerning the benefits and duties owed to the general public, reads in part as follows:
"11. ROADSIDE AUTOMOTIVE SERVICES
"a. the operator will provide rapid and efficient roadside automotive service on a 24-hour basis from each gasoline service station facility for the areas, more particularly shown in Addendum A attached hereto and made a part hereof, when informed by the authority or its police personnel of a disabled vehicle * * * The services which the operator is required to perform must include minor roadside repairs, such as, but not limited to, the replacement of fan belts, repair or changing of flat tires * * *
*656 "d. The operator specifically agrees and covenants that roadside automotive services shall be carried out in a safe manner without endangering the operator's or authority's property, personnel or equipment, or the traveling public * * *
"e. The operator specifically covenants and agrees that it will have sufficient roadside automotive service vehicles, equipment and personnel to provide roadside automotive service to disabled vehicles within a maximum of thirty (30) minutes from the time a call is assigned to a service vehicle * * *
"i. The operator is required while en route to or from an assigned road service call, to stop at and to service any vehicle in distress.”
The contract specifically expresses the authority’s legal duties to the people of the State and others using the Thruway. It is unrealistic to construe the terms of this contract as anything other than one for the benefit of a patron. Particularly so when one considers this roadway to be a limited access road open to the public for a fee and serviced by an exclusive franchisee. No outside service is permitted on this road. A patron is subject to the whim, will and caprice of the exclusive franchisee. In further recognition of the authority’s duty to patrons is the constant patrol of the roadway by State troopers and, as testimony revealed, one of the trooper’s duties was to seek assistance for distressed vehicles by calling and thereafter being advised which particular service vehicle was being dispatched by the franchisee to render aid.
Additionally supportive of the fact that the contract intended and recognized that a duty was owed to patrons was the testimony of the defendant Ettinger in his examination before trial that there was a duty to assist motor vehicles , in distress.
The defendant’s reliance on Ramos v Schumavon (21 AD2d 4, affd 15 NY2d 610); Bernal v Pinkerton’s, Inc. (52 AD2d 760) and Rozner v Resolute Paper Prods. Corp. (37 AD2d 396) as authority for the proposition that the contract in suit is not for the benefit of the public is wholly misplaced. The contract herein contains specific undertakings by the defendant for the safety, protection, health and welfare of the traveling public by its numerous references to patrons, including the necessity of maintaining liability insurance.
In the Ramos case (supra) there was no specific undertaking *657 for the safety or protection of the class of which decedent was a member. In the Bernal case (supra) the contract terms were determined to be solely and exclusively for the protection of the telephone company property and not personal injury. Similarly, the contract provisions in the Rozner case (supra) merely spelled out an intention by the parties that only property damage was contemplated and not personal injury or wrongful death.
The court is of the opinion, as in Schnaier v Bradley Contr. Co. (181 App Div 538, 539) that: "A fair construction of the provisions of the contract indicate to my mind an intention on the part of the contractor to become personally liable * * * for the injury done.”
It is quite conclusive, therefore, that, as a matter of law, there existed a good and valid third-party beneficiary contract with the decedent having the status of such beneficiary.
[Material omitted for purposes of publication.]
Therefore, the motions of the defendants are in all respects denied.
As to the remaining issue for the court to determine, to wit: the third-party claim of the defendant Chevron against defendant Ettinger, the court in conformance with all that has hereinbefore been set forth and based on the contracts between Chevron and Ettinger, the third-party plaintiff, Chevron, is entitled to judgment over as against the third-party defendant, Ettinger.