Novella H. TRAGESER

v.

LIBBIE REHABILITATION
CENTER INC., etc.

Civ. A. No. 77–0191–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 17, 1977.

G. Timothy Oksman, Farino & Oksman, Richmond, Va., for plaintiff.

Lewis T. Booker, Charles S. McCandlish, Hunton & Williams, Richmond, Va., for defendant.

MEMORANDUM

WARRINER, District Judge.

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, defendant seeks in its motion of 3 August 1977 to dismiss the above styled action. As plaintiff's responsive brief and defendant's rebuttal brief have both been timely filed with the Court, the matter is now ripe for disposition.

A brief summary of the facts may be helpful. The defendant is a private corporation which operates a nursing home in Richmond, Virginia for profit. It enjoys no tax-exempt status nor was construction of its nursing home funded under the Hill-Burton Act. Defendant receives payments for services rendered under the Medicare, Medicaid and Veteran's Administration programs and is subject to inspection by the State Department of Health.

Plaintiff, the Director of Nursing of said nursing home, suffers from retinitis pigmentosa, a progressive hereditary visual impairment. During a regular inspection of the nursing home in April of 1976, a representative of the Department of Health commented on plaintiff's failing eyesight. That comment was reported to defendant's Board of Directors. On 7 June 1976, the Board of Directors resolved to replace plaintiff as Director of Nursing as soon as possible. Some three months later plaintiff tendered her resignation, effective 8 September 1975 and left defendant's employ.

Plaintiff's complaint alleges that in terminating her employment, defendant engaged in State action and acted under color of law so as to violate Amendments V and XIV of the United States Constitution and 42 U.S.C. § 1983. Plaintiff further alleges that defendant engaged in discrimination in violation of Section 794 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

To satisfy the State action requirement of Section 1983, plaintiff argues that regulation by the State renders action by the nursing home State action within the

426

meaning of Section 1983. Defendant argues that the weight of authority is contra to plaintiff's position and cites, among others, *Moose Lodge 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and *Jackson v. Metropolitan Edison,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). A careful reading of these two cases readily shows that more than mere regulation is necessary to constitute State action. As enunciated by the Supreme Court in *Jackson,* the test for State action in the context of State regulation is whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. 419 U.S. at 351, 95 S.Ct. 449. As the decision in the instant case to replace plaintiff as Director of Nursing was that of the defendant's Board of Directors and not the State, such nexus as set forth in *Jackson* does not exist.

■ In support of her State action argument, plaintiff further argues that receipt of federal funding in the form of Medicare, Medicaid and Veteran's Administration programs by defendant's nursing home transforms the acts of the nursing home into those of the State. Plaintiff cites *Doe v. Charleston Area Medical Center,* 529 F.2d 638 (4th Cir. 1975) as authority. In *Doe* a woman desiring an abortion brought a class action against a private medical center which refused to perform abortions except to save the life of the mother, such refusal being based in part on a State abortion law. The Fourth Circuit held that federal jurisdiction existed as State action was present. Plaintiff argues that *Doe* is binding in the case at bar as *Doe* involved a private hospital which received Medicare and Medicaid funds. *Doe* is readily distinguishable, however, as the Fourth Circuit based its holding that State action was present not on the basis of federal funding but rather on the fact that in *Doe* the defendant's anti-abortion policy, being based on West Virginia's criminal abortion statute, involved the State sufficiently to constitute the policy "State action" under 42 U.S.C. § 1983. In the instant case nothing in the stipulations

supports any State sanction—at most a suggestion. Although plaintiff argues that defendant's Board of Directors based its dismissal of plaintiff on State accreditation requirements, such position is supported nowhere in the record. Indeed, the State Department of Health did not even list plaintiff's handicap as a deficiency.

■ Finally, plaintiff alleges a claim under Section 794 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Unlike Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* or the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, the Federal Rehabilitation Act provides no specific grant of a private cause of action. There is no clear legislative history of Section 794 indicating a Congressional intent to provide a handicapped employee with a private right of action against his private employer. Furthermore, as Section 794 only pertains to "any program or activity receiving Federal financial assistance," jurisdiction cannot be invoked by plaintiff as defendant's nursing home has not received such assistance. The federal funds received by the nursing home are not "federal assistance" but rather payment for services rendered. Federal judges receive federal salary checks each month but it is not supposed that this is "assistance." It is presumed that they are being paid an approximation, at least, of what they should be compensated for judging. Even if Section 794 creates a private right, which is not decided here, no such right could reasonably be contended for in the absence of a showing that said nursing home is a "program or activity receiving Federal financial assistance."