**BERNARD B., Shirley B., and Lynette D., individually and on behalf of all others similarly situated; Council of Municipal Hospital Boards; John Gardiner, as President of the Council of Municipal Hospital Boards, Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF GREATER NEW YORK; Albert B. Lewis, individually and as Superintendent of the State of New York Insurance Department; New York City Health and Hospitals Corporation, Defendants.**

No. 80 CIV 5509 (LBS).

United States District Court,
S. D. New York.

Sept. 28, 1981.

New York Lawyers for the Public Interest, Inc., New York City, for plaintiffs; Minna J. Kotkin, New York City, of counsel.

Community Action for Legal Services, Inc., New York City, for plaintiff, John Gardiner and Council of Municipal Hospital Boards; Ira S. Bezoza, New York City, of counsel.

Washington Square Legal Services, Inc., New York City, for plaintiff, John Gardiner and Council of Municipal Hospital Boards; Janet M. Calvo, Paula Galowitz, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for Blue Cross and Blue Shield of Greater New York; Robert A. Bicks, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, for Albert B. Lewis and the State of N. Y. Ins. Dept.; Donald Sticklor, Asst. Atty. Gen., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel for the City of New York, for New York City Health and Hospitals Corp.; Bradley A. Sacks, Asst. Corp. Counsel, Brooklyn, N. Y., of counsel.

## OPINION

SAND, District Judge.

*Introduction*

Plaintiffs Bernard B., Shirley B., and Lynette D.,[1] suing individually and on behalf of an as yet uncertified class, as well as two institutional plaintiffs,[2] challenge a practice which prevailed until November 6, 1980, of excluding from basic Blue Cross and Blue Shield of Greater New York (hereinafter "Blue Cross") insurance coverage psychiatric inpatient care in New York City Health and Hospitals Corporation (hereinafter "HHC") hospitals. Plaintiffs claim that this exclusion was discriminatory in violation of federal and state statutes, and the United States Constitution, because non-psychiatric care in HHC hospitals was covered and psychiatric care in non-HHC hospitals was also covered. Plaintiffs sue Blue Cross under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and under N.Y.Ins.Law § 209(2) (McKinney). They sue Albert B. Lewis, (hereinafter "Superintendent") individually and as Superintendent of the New York State Insurance Department, under § 209(2), and the equal protection and due process clauses of the Fourteenth Amendment, and 42 U.S.C. § 1983. Lastly, plaintiffs sue HHC under the Rehabilitation Act, the Fourteenth Amendment, and § 1983, and also bring a negligence claim against HHC for a failure to warn plaintiffs that the hospital's inpatient psychiatric care was not covered by Blue Cross.[3] Plaintiffs seek declaratory and injunctive relief against all three defendants, plus damages against HHC and

---

1. *But see* n.6 *infra.*

2. These are the Council of Municipal Hospital Boards, and John Gardiner, as president of that council.

3. HHC in its answer has cross-claimed against

Blue Cross,[4] and attorney's fees, costs and disbursements pursuant to 42 U.S.C. § 1988.

The matter comes now before the Court on defendants' motions for summary judgment.[5] Blue Cross and HHC have moved with respect to all claims against them. Blue Cross additionally moves for attorney's fees, costs and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794a(b).

The Superintendent has joined in Blue Cross' motion. However, Blue Cross moves only with respect to claims one, three, and seven of the complaint, that is, the claims against itself, whereas the claims against the Superintendent are stated in claims four and six of the complaint. Moreover, although plaintiffs bring § 209(2) claims against both, the Fourteenth Amendment and § 1983 claims are brought against the Superintendent but not Blue Cross. While technically the Superintendent has not moved with respect to the counts against him or at least with respect to all of them, our reasoning and results as to the Fourteenth Amendment and § 1983 claims against HHC and the § 209(2) claim against Blue Cross are applicable to the Superintendent as well. It would be a mere formality to require the Superintendent to move further after this decision. Therefore, we deem the Superintendent to have

moved with respect to the claims against him.

*Facts*

Bernard and Shirley B.,[6] husband and wife, were, at all relevant times, covered by Blue Cross health insurance as an incident of Bernard B.'s private employment. Shirley B. was admitted to an HHC hospital for emergency psychiatric treatment in November of 1978, December of 1978, and January of 1979. Plaintiffs allege that the B.s were never informed that Blue Cross did not cover this care. Bernard and Shirley B. received bills totalling $11,600 from the hospital. Blue Cross denied coverage "on the grounds that the contract does not provide benefits for psychiatric care when the admission is to a governmental hospital." Plaintiffs' Brief at 5–6. Plaintiffs state that HHC has threatened the B.s with legal proceedings to collect the $11,600.

Until November 6, 1980, that is, during all three of Shirley B.'s confinements, Blue Cross excluded inpatient psychiatric care in HHC hospitals from its basic coverage. In 1974, Blue Cross had requested permission from the Insurance Department to include such coverage in all contracts of Bernard B.'s category. The Superintendent denied permission.[7] However, Blue Cross had of-

---

the Superintendent and the State of New York. Answer of HHC at ¶ 35.

4. Although the Complaint by its terms seeks damages against HHC only, Blue Cross construes plaintiffs' claim for an injunction "'[requiring] . . . Blue Cross to provide coverage to plaintiffs . . . who have been wrongfully denied insurance coverage," Complaint ¶ 5 at 19, as a claim for damages against Blue Cross as well. *See* Blue Cross' Memorandum at 6.

5. Pursuant to Fed.R.Civ.P. 12(b)(6), we treat HHC's motion to dismiss as a motion for summary judgment, since HHC has presented in support of its motion exhibits and affidavits.

6. As to Lynette D., plaintiffs state:
   By a letter dated April 13, 1981, Minna Kotkin, counsel for plaintiff Lynette D., informed the court that she has been unable to contact Lynette D. and seeks leave to have her withdrawn as a named plaintiff because she is not an adequate representative under these circumstances. Thus, pending resolution of this matter, references to Lynette D. or her claims

have been omitted from this memorandum and the accompanying affidavits.
Plaintiffs' Brief at 5 n.*.

7. The Superintendent's Opinion and Decision stated:
   Serious questions arise as to whether community-rated subscribers should be forced to shoulder these additional burdens [for expanded maternity benefits, psychiatric coverage, and hemophiliac care] when the cost of all necessities, including health insurance, has already placed a severe strain on subscribers with low and medium incomes. The problem is further complicated by the fact that there are many other important and beneficial types of medical care that are not now covered by Blue Cross.[2]
   ["2 For example, many forcefully advocate that Blue Cross coverage should extend to non-hospital clinics specifically designed for treatment of alcoholism. Others insist that coverage for pre-natal care is equally, if not more, important."]
   Since the existing source of available financial resources—the consumer's pocket-

fered the option of such coverage to Bernard B.'s group at an increased premium. The option was declined.

In July, 1980, Blue Cross again sought permission to include the disputed coverage in its minimal hospital coverage. This time the Insurance Department granted permission "on an experimental basis subject to an annual review of the cost and magnitude of the benefit provided," Robins Affidavit ¶ 14. Consequently, "on November 6, 1980, such expanded psychiatric coverage became effective for all Blue Cross community-rated subscribers, including named plaintiffs." Blue Cross' Memorandum at 9 (citation omitted).

*Mootness*

■ Blue Cross and HHC argue that plaintiffs' case is moot in part, Blue Cross claiming that the November, 1980, change has mooted plaintiffs' claim for future injunctive relief against Blue Cross, and HHC arguing that the same change has mooted plaintiffs' claims to prospective and declaratory relief. However, plaintiffs now limit their prayer for injunctive relief as follows:

> While "future" injunctive relief appears unnecessary as a result of Blue Cross' change in policy, plaintiffs still seek an injunction restraining Blue Cross from disallowing coverage for psychiatric care and treatment received at HHC hospitals prior to November 6, 1980, and enjoining HHC from continuing or instituting collection proceedings.

Plaintiffs' Brief in Opposition at 4 n.*. So limited, plaintiffs' claims for injunctive relief are not moot.

We likewise construe plaintiffs' claims for declaratory relief as now limited to a request for declarations concerning defendants' actions prior to November 6, 1980, as well as for declarations as to HHC's efforts to collect from plaintiffs for charges incurred before the November 6 change, and as to Blue Cross' persisting liability for those charges. So construed, these claims are not moot. A genuine controversy survives concerning liability for such charges and the legality of the exclusion pursuant to which those charges were not covered by Blue Cross and therefore, according to defendants, devolved upon the individuals treated.

*Causation*

■ Both Blue Cross and HHC have raised causation arguments, maintaining that they were not the cause of any injury

---

book—is not limitless, priorities must be established. Any rational determination regarding priorities must be dependent upon the advice of medical and financial experts, as well as the desires and needs of the general public. Such decisions should not generally be established unilaterally in a proceeding directed mainly at premium rate levels, unless, of course, a proposed new benefit either will reduce the overall cost of providing existing coverage or has broad community and expert approval and support.

Viewed in this context, the Department will only approve the proposed benefit for outpatient hemophiliac treatment which will require marginal added costs, if any, since it permits treatment on a less expense outpatient basis under appropriate circumstances rather than in a hospital as presently required.

. . . .

While the proposed expanded psychiatric coverage would result in some offsetting savings,[4]

["4 The new benefit might lead some people, who today are treated in high-cost general hospitals because Blue Cross will pay, to receive psychiatric treatment in voluntary private hospitals that have a substantially lower per diem rate."]

there is a considerable net extra cost of $15 million annually. Moreover, the proposed new benefit causes internal inconsistencies and deficiencies. For example, Blue Cross attempts to exclude payment for expensive custodial care by limiting its coverage to facilities having an average stay of 60 days. At the public hearing, it was clearly demonstrated that such a standard is subject to considerable distortions that defeat its very purpose. Furthermore, Blue Cross's proposal excludes State hospitals entirely from its coverage while including municipal and privately owned hospitals. The validity of this exclusion, as well as the degree to which custodial care should be excluded from coverage, should be weighed as a part of the development of a broadly conceived state policy for mental health.

In re Blue Cross and Blue Shield of Greater New York, Opinion and Decision of Benjamin R. Schenck, Superintendent of Insurance, Feb. 19, 1975 (footnote omitted), Appendix I to HHC's Memorandum in Support.

to plaintiffs and therefore should be granted summary judgment.

Blue Cross advances two causation arguments: first, that it was the failure of Bernard B.'s subscriber group to purchase the option which would have covered inpatient HHC psychiatric care, rather than Blue Cross' failure to include such coverage in its basic plan, which caused the harm complained of; and second, that it was the Superintendent's 1975 denial of the Blue Cross request to include such coverage in its basic plan which was the cause, and Blue Cross cannot be held liable for failing to do that which the Superintendent decreed it could not do.

The first of these arguments is unpersuasive. Even if the decision of the group subscriber not to buy the relevant coverage was a concurrent cause, the fact that the coverage was not a part of the minimum plan but rather had to be bought at extra cost is a cause of Bernard and Shirley B.'s incurring the cost of her hospitalizations. The fact that there was a way to make up for the lack of coverage in the minimum plan, does not alter the fact that if, *arguendo*, plaintiffs had a right to such coverage, Blue Cross' exclusion of such coverage from the minimum plan and placing of that coverage in such a posture that it was a more expensive option and therefore less likely to be purchased and available to the B.s, was causally related to Shirley B.'s hospitalizations not being covered by insurance.

As to the second argument, plaintiffs and Blue Cross agree that the issue is whether Blue Cross had sufficient freedom of choice to render it responsible, or whether the State's involvement was "so dominant that it would be unfair to hold a private party responsible," *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 592, 96 S.Ct. 3110, 3118, 49 L.Ed.2d 1141 (1976). Certainly, there was extensive state regulation of Blue Cross' actions. However, even if the State's role in the formal decision making process was the dominant one (which we need not now decide), plaintiffs raise an issue as to whether Blue Cross could have "waived" its exclusion of HHC psychiatric inpatient coverage. Blue Cross endeavors to demonstrate that it lacked this option. However, having considered the proofs offered on both sides, we conclude that there remains an issue of material fact, or mixed fact and law, on this point, and we cannot say as a matter of law that Blue Cross has shown such an absence of choice in this area that we should find it without liability on causation grounds.

HHC adds to the causation arguments the assertion that it had no control over whether Blue Cross excluded coverage of HHC inpatient psychiatric care. Plaintiffs on the other hand argue that HHC was causally involved in the injury complained of,

> . . . by entering into "memoranda of understandings" with Blue Cross, through which it agreed to be reimbursed in accordance with the psychiatric exclusion . . . . HHC does not—nor could it—seriously contend that these memoranda do not constitute "contractual arrangements." The effect of HHC's adoption of the psychiatric exclusion is to deny to a class of persons suffering from mental illness (*i.e.* handicapped persons) a benefit available to the class of persons suffering from other illnesses.

Plaintiffs' Brief in Opposition at 37. While HHC claims it had no power over Blue Cross coverage, we cannot say on the record before us that we are persuaded that in fact HHC had no control. HHC seeks to paint a picture of the relationship between itself, Blue Cross, and the Insurance Department, according to which HHC lacked all capacity to initiate or refuse coverage changes. On the proofs before us, we are not convinced of the accuracy of this picture to the extent required on a motion for summary judgment.

*Rehabilitation Act*

■ Plaintiffs bring claims under the Rehabilitation Act against Blue Cross and HHC. These defendants raise several preliminary arguments to the effect that the Rehabilitation Act does not apply to them.

The Rehabilitation Act provides that, "No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794.

HHC maintains: (a) that the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), defeats plaintiffs' Rehabilitation Act claim; and (b) that even if plaintiffs were successful in their Rehabilitation Act claims, this would be no defense to liability for medical services rendered. Blue Cross argues that the Rehabilitation Act does not apply to it, because: (a) Blue Cross is not a recipient of "Federal financial assistance" under the Rehabilitation Act; and (b) the federal funds Blue Cross receives are Medicare funds, and plaintiffs are not claiming as recipients of such funds. We consider these arguments in turn.

The McCarran-Ferguson Act provides in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. . . ." 15 U.S.C. § 1012(b). Plaintiffs do not argue that the Rehabilitation Act falls within the McCarran-Ferguson exception for acts which "specifically [relate] to the business of insurance." Rather, plaintiffs dispute HHC's two assertions that the HHC/Blue Cross agreements constitute "the business of insurance" within the meaning of the McCarran-Ferguson Act, and that the gravamen of plaintiffs' suit is a Blue Cross exclusion which constitutes "the business of insurance" within the meaning of that act.

We find the McCarran-Ferguson Act inapplicable in this case on the basis of *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). HHC's argument that its agreements with Blue Cross constitute "the business of insurance" flies in the face of *Royal Drug.* Under the *Royal Drug* analysis,

while these provider agreements constitute the business of insurance companies, the agreements do not constitute the "business of insurance," *see id.* at 219 n.18, 99 S.Ct. 1077 n.18. The agreements "do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by" Blue Cross. *See id.* at 214, 99 S.Ct. at 1074.

HHC's broader argument, that the gravamen of plaintiffs' suit, namely, an exclusion from Blue Cross coverage, constitutes the "business of insurance," raises an issue explicitly left undecided in *Royal Drug.* The Court cautioned, "This is not to say that the contracts offered by Blue Shield to its policyholders, as distinguished from its provider agreements with participating pharmacies, may not be the 'business of insurance' within the meaning of the Act." *Id.* at 230 n.37, 99 S.Ct. at 1082 n.37. However, the Court extensively reviewed the status of Blue Cross, Blue Shield plans under the McCarran-Ferguson Act, and concluded that they were not considered the "business of insurance" under the act at the time it was passed. Moreover, the Court noted that most courts have regarded them as outside of that category for the purposes of the act. *Id.* at 226 n.33, 99 S.Ct. at 1080 n.33. Even if a state treated such plans as insurance, that would not be controlling on the McCarran-Ferguson issue. *See S.E.C. v. Variable Annuity Life Insurance Co.*, 359 U.S. 65, 69, 79 S.Ct. 618, 620, 3 L.Ed.2d 640 (1959).

HHC points us to nothing since *Royal Drug* which alters this picture. Accordingly, we find that McCarran-Ferguson Act inapplicable.

HHC's argument that the plaintiffs' claims cannot relieve them of or shift liability for services rendered is likewise unpersuasive. In support of its argument, HHC refers us largely to cases decided under the Hill-Burton Act. We find them inapposite. In the cases before us, plaintiffs assert that the statute under which they claim mandates an alteration in medical coverage which would shift liability. If the Rehabilitation Act reaches medical coverage, we find no *a priori* obstacle to relief.

■ Blue Cross, for its part, advances the argument that it does not fall within the purview of the Rehabilitation Act because it was not the recipient of "Federal financial assistance," 29 U.S.C. § 794. It is undisputed that Blue Cross is the recipient of Medicare, Part A funds. The question is whether Blue Cross' receipt of such funds constitutes federal financial assistance within the meaning of the Rehabilitation Act.

We cannot say that Blue Cross has established that no genuine issues of material fact remain on this point and that it is entitled to judgment as a matter of law. Blue Cross acts as a conduit for Medicare funds, performing various functions and ultimately distributing the funds. Blue Cross additionally receives payment for administrative expenses. Plaintiffs have raised a genuine issue of material fact concerning the intermingling of Medicare and other Blue Cross funds and lumping of expenses such that federal Medicare funds may play a part in enabling Blue Cross to carry on both Medicare and non-Medicare activities. *See* Plaintiffs' Brief in Opposition at 34 and Affidavit cited therein. Although plaintiffs raise this in response to Blue Cross' nexus point, we find it pertinent here as well under the very test Blue Cross advances, that is, whether the contract in question is "in the nature of a subsidy" as opposed to a procurement contract. *See* Blue Cross' Reply Memorandum at 13, *citing Cook v. Budget Rent-A-Car Corp.*, 502 F.Supp. 494, 501 (S.D.N.Y.1980).

The same factual issue defeats Blue Cross' nexus argument as well, since this issue raises the possibility of a "material connection," see *Stewart v. New York University*, 430 F.Supp. 1305, 1314 (S.D.N.Y. 1976) between the Medicare funds and the Blue Cross activities of which plaintiffs complain. Plaintiffs' Brief in Opposition at 34 n.* further states that,

Plaintiffs also submit that there is an interplay between Blue Cross reimbursement and non-third party reimbursed services in the municipal hospitals, and that the lack of such reimbursement adversely affects the ability of HHC to provide certain services to all hospital consumers, including Medicare beneficiaries and Blue Cross subscribers.

Thus, even if, as defendant argues, nexus is required, which we do not decide, defendant Blue Cross has not established its entitlement to summary judgment on nexus grounds.

■ This brings us to the merits of plaintiffs' Rehabilitation Act claims. Plaintiffs maintain that the exclusion of inpatient care in HHC facilities from minimum Blue Cross coverage, and Blue Cross/HHC agreements to that effect constitute discrimination solely because of handicap. We cannot agree. Medical coverage is structured around the identification of categories of benefits and a calculation of risk and consequent costs for that coverage. The fact that the benefit in question here remained outside the minimum coverage plan is a function of the limited risk coverage. *See* Superintendent's decision of 1975, n.7 *supra.* Reasons other than handicap account for the exclusion of the risk. The Second Circuit has identified a "substantial justification" exception to the Rehabilitation Act. *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977). The insurance characteristics of the benefit in question here which rendered it outside the minimum plan constitute "substantial justification."

This is not a case of the exclusion of persons from general care because of psychiatric handicap.[8] Instead, it is a matter of covering some benefits in the minimum plan and not others, given limited resources. *See* Superintendent's Opinion at n.7 *supra.* In this particular context, that is, medical insurance, we cannot regard this as discrimination solely by reason of handicap.

The logical consequence of plaintiffs' contention would be to mandate that, if any medical benefits were provided, there could

---

**8.** Nor of course is it a case of exclusion on the basis of an inherently invidious classification such as race.

be no benefits excluded regardless of the costs of providing the treatment in question or the preferences of the insured group. We do not believe that Congress intended to prohibit all medical insurance which was less than total in its coverage, for the necessary consequence of such a ruling would be either to end all medical insurance or to require drastic reduction in the amount of allowable benefits for those risks of primary concern to the covered employees. We do not believe that the Rehabilitation Act mandates that the decision between, for example, dental or psychiatric coverage, assuming cost considerations preclude both at a reasonable benefit level, is one which cannot be left to the employer, his employees and the insurer.[9]

Accordingly, plaintiffs' Rehabilitation Act claims must fail.[10]

*Equal Protection*

██ Plaintiffs bring claims under the Fourteenth Amendment against HHC and the Superintendent. The parties dispute the appropriate level of equal protection scrutiny for the mentally handicapped. However, under either an intermediate or minimal level of scrutiny we find that the conduct at issue here passes muster under the equal protection clause.[11]

HHC points us to the articulation of reasons contained in the Superintendent's 1975 decision.[12] There, the Superintendent states that in view of consumers' limited resources, priorities in the provision of benefits must be established. Inpatient psychiatric care in HHC hospitals is one of a number of benefits the Superintendent denies. He approves only a benefit "which will require marginal added costs, if any,"

stating that as to "the proposed expanded psychiatric coverage. . . , there is a considerable net extra cost of $15 million annually."

That the State has a legitimate interest in regulating medical insurance,[13] including insurance rates, cannot be questioned. New York has an extremely comprehensive system of insurance regulations, including the regulation of Blue Cross practices. The fact that a certain benefit is costly is an appropriate and necessary consideration in deciding whether the cost should be passed on to consumers in the form of higher rates. This type of consideration is central to the activities of the state regulator of insurance practices. The means the State chose here to accomplish its purpose of establishing an affordable insurance package were rational, substantially related to its primary goal, and permissible.

In addition to the Superintendent's decision, plaintiffs challenge the Memoranda of Understanding between Blue Cross and HHC. These Memoranda are agreements that set rates of reimbursement as between HHC and Blue Cross, with no mention of specific benefits. Clearly it is in HHC's legitimate interest to enter into such agreements for payment from an insurer. Plaintiffs argue that HHC thereby acquiesced in the exclusion of HHC psychiatric inpatient benefits. However, HHC's entrance into these agreements and implicit acceptance of certain exclusions is rationally and substantially related to its permissible goal of arranging for insurer payment.

Moreover, although plaintiffs would cast this as a case of discrimination against the mentally handicapped, it is not such a case. At the relevant times, psychiatric inpatient

---

**9.** It is one thing to argue that a disabled person is protected against discrimination solely because of his disability with regard to employment, education or other activities covered by the Rehabilitation Act. It is quite another thing to say, in the context of medical insurance, that all forms of medical care must be covered because any exclusion is a discrimination based upon disability.

**10.** Although by different reasoning, we reach the same result as did the court in *Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979).

**11.** Although plaintiffs invite us to apply strict scrutiny, the authorities they advance have applied intermediate or minimal scrutiny in the case of the mentally disabled. *See* Plaintiffs' Brief at 54–60.

**12.** *See* n.7 *supra.*

**13.** We do not, in referring here to Blue Cross coverage colloquially as "insurance," detract in any way from our holding *supra,* that the McCarran-Ferguson Act is inapplicable.

care in non-HHC hospitals was covered. It is only the exclusion of such coverage for HHC care which is challenged. Thus, the line drawing challenged here is not line drawing on the basis of handicap, but on the basis of type of care.[14] There is a rational relationship between this line drawing and the legitimate goals of the Insurance Department and HHC. We cannot find equal protection to mandate in this context that all types of care be offered.[15] *See Legion v. Richardson*, 354 F.Supp. 456, 459 (S.D.N.Y.) (three judge court), *aff'd sub nom. Legion v. Weinberger*, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973).

*Other Claims*

While plaintiffs recite in their complaint that their Fourteenth Amendment claim is also a due process claim, they have not so argued on this motion and we deem this contention to have been abandoned.

As to plaintiffs' § 1983 claim, our grant of summary judgment to defendants on the constitutional and federal statutory claim presented, mandates the same result by the terms of § 1983.

Having granted to defendants summary judgment on the federal claims presented, we follow the procedure directed by *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir. 1974) and as a matter of discretion decline to exercise pendant jurisdiction as to the state statutory claim and the common law claim of negligence presented.

■ We further deny Blue Cross' claim for attorney's fees under 29 U.S.C. § 794a(b). That section provides that, "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The provision makes clear the discretionary nature of such an award. Blue Cross has not advanced any ground on which an award of attorney's fees or costs and disbursements would be appropriate. Nor are plaintiffs entitled to an attorney's fees award pursuant to their application under 42 U.S.C. § 1988, since plaintiffs are not the "prevailing party." Section 1988 provides in pertinent part that, "In any action or proceeding to enforce a provision of [section] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

*Conclusion*

We grant all three defendants summary judgment on the federal law claims brought respectively against them, and decline to exercise pendant jurisdiction over the state law claims.

SO ORDERED.

---

14. *Cf. Schweiker v. Wilson*, 450 U.S. 221, 231, 101 S.Ct. 1074, 1081, 67 L.Ed.2d 186 (1981) ("[T]his statute does not classify directly on the basis of mental health.... [T]his legislation ... implies equivalent deprivation on other groups who are not mentally ill, while at the same time benefiting substantial numbers of the mentally ill." (Footnote omitted.)).

15. The consequences of holding that the equal protection clause requires that all medical care must be covered are staggering, especially when one considers medical treatments of limited availability and extreme expense, such as dialysis.