**UNITED STATES of America, Plaintiff,**

v.

**BAYLOR UNIVERSITY MEDICAL CENTER, Defendant.**

Civ. A. No. CA–3–82–0453–D.

United States District Court,
N.D. Texas,
Dallas Division.

June 7, 1983.

---

Wm. Bradford Reynolds, Asst. Atty. Gen., Civil Rights Div., Timothy M. Cook, Daniel P. Butler, Attys. Sp. Lit. Sec., Civil Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

Robert W. Smith, Bowen L. Florsheim, Smith, Smith & Florsheim, Dallas, Tex., for defendant.

## ORDER

ROBERT M. HILL, District Judge.

This is an action brought by the United States to enforce the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and regulations promulgated thereunder by the Department of Health and Human Services (HHS). On

the basis of certain complaints it received, HHS seeks to investigate defendant Baylor University Medical Center (Baylor) to determine whether hearing-impaired patients are provided effective services at Baylor's facilities, in compliance with Section 504. Baylor has refused to allow HHS to investigate it, on the ground that it is not a recipient of "Federal financial assistance" within the meaning of Section 504, and therefore is not required to comply with the provisions of that section. This matter is presently before the Court on Baylor's motion for summary judgment or alternatively for partial summary judgment and the government's cross-motion for summary judgment. Having considered the briefs which were submitted and heard oral argument on the motions, this Court has concluded, for the reasons set forth below, that Baylor's motion must be denied and the government's cross-motion must be granted.

I.

The following summary of the facts pertinent to this case is culled from the set of stipulated facts to which the parties agreed, as well as the various exhibits which have been attached to the parties' motions or responses to motions.

Baylor is a medical facility which receives federal funds from Medicare and Medicaid as reimbursement for services rendered to patients covered by Medicare and Medicaid. In July 1977, in accordance with Department of Health, Education and Welfare regulations, Baylor signed and filed an assurance of compliance with Section 504 in order to receive Medicare and Medicaid payments. In signing that assurance, however, Baylor did not concede that Medicare or Medicaid would constitute federal financial assistance such that it would require Baylor to comply with Section 504.[1]

Medicare, Medicaid, and private insurance all provide reimbursement to Baylor for costs incurred in rendering services to patients. That reimbursement is, in many instances, only a portion of the cost of the services rendered. The patient who is covered by private insurance must pay for the services not reimbursed by his or her insurance; no additional payments, however, are received from Medicare and Medicaid patients. The funds received from private insurance, Medicare, and Medicaid are all placed in the general operating fund of Baylor. Baylor draws from its general operating fund to pay for, among other things, supplies, building maintenance, and general operations.

On May 9, 1980, the first of three complaints from the same complainant was filed with the Regional Office of HHS in Dallas, Texas. It alleged that Baylor had refused to permit a hearing-impaired person, a patient at the hospital, access to sign language interpreter services which she had contracted for at her own expense and which she needed to communicate effectively with hospital personnel. On May 20, 1980, HHS initiated an investigation into Baylor's compliance with Section 504 in connection with services for hearing-impaired persons, by requesting pertinent data and a meeting with Mr. Boone Powell, Jr., president of Baylor.

Baylor responded through counsel on June 20, 1980, stating that it refused to subject itself to any investigation by HHS due to its belief that it received no "Federal financial assistance" within the meaning of Section 504. HHS then notified Baylor of its position that Medicare payments are considered Federal financial assistance and indicated that other payments to Baylor constitute such assistance. Baylor, however, held to its position that HHS lacks jurisdiction to investigate under Section 504. On August 25, 1981, HHS referred the case to the Department of Justice for enforcement action. The complaint in this action was filed on March 23, 1982.

---

1. Section 504 provides in pertinent part:

No otherwise qualified handicapped individual in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794.

Motion for summary judgment have been filed by both parties in this action. In Baylor's motion it contends: (1) that this Court lacks jurisdiction over the action; (2) that Baylor is not a "recipient" of Federal financial assistance as that term is defined in the relevant regulations; and (3) that neither Medicare nor Medicaid payments constitute "Federal financial assistance" within the meaning of Section 504 and 45 C.F.R. § 84.3(h).[2] Fourth, Baylor raises in the alternative an argument concerning the fact that Section 504 is "program-specific," i.e., the fact that it applies only to programs or activities benefited by federal financial assistance. Baylor argues that that means in this case that HHS may not conduct an investigation unless the complainant upon whose complaint the investigation would be based is him- or herself a direct beneficiary of Medicare or Medicaid. For its part, the United States argues in its cross-motion (1) that this Court does have jurisdiction over the action, (2) that Baylor is a "recipient" of federal financial assistance, and (3) that both Medicare and Medicaid constitute such assistance. Further, the United States agrees that Section 504 is "program-specific," but contends that its program-specificity does not impede the right of HHS to investigate allegations of discrimination against hearing-impaired persons in Baylor's provision of in-patient and emergency room services where those services are paid for in part through Medicare and Medicaid.

## II.

■ The first issue to consider is the jurisdiction of this Court over this action. It is evident that such jurisdiction exists.

Pursuant to 28 U.S.C. § 1345, the district court has original jurisdiction over all civil actions commenced by the United States or by an agency thereof. Thus, jurisdiction exists so long as the United States has the right to bring this suit.

■ Both federal common law and statutory authority provide the United States

with the right to sue in this case. The statutory authority for the Department of Justice to sue on behalf of HHS to seek enforcement of Section 504 of the Rehabilitation Act lies in 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 2000d–1; and 28 U.S.C. § 516. In addition, it is well established under federal common law that the government has the right to sue to enforce contractual assurances of compliance with the Civil Rights laws, such as the assurance of compliance with section 504 into which Baylor entered. *See United States v. Marion County School Dist.*, 625 F.2d 607, 611 (5th Cir.1980). Consequently, jurisdiction over this action is proper, and this Court may proceed to consider the arguments of the parties in connection with the relevant substantive law.

■ The rights and duties conferred by Section 504 apply with respect to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Baylor contends that it is not a "recipient" of Federal assistance within the meaning of Section 504 and the applicable HHS regulations. The argument lacks merit. The term "recipient" is defined in the regulations to include "any ... institution, organization, or other entity ... to which Federal financial assistance is extended directly or through another recipient, ... by excluding the ultimate beneficiary of the assistance." 45 C.F.R. § 84.3(f). Assuming *arguendo* for the moment that Medicare and Medicaid are forms of Federal financial assistance, it is clear that Baylor is an institution to which Federal assistance is extended, and further that it is not Baylor but rather the eligible patients who are the ultimate beneficiaries of the assistance. Thus Baylor is a "recipient" of federal assistance, so long as Medicare or Medicaid constitute such assistance.

The chief argument raised by Baylor is that neither Medicare nor Medicaid is "Federal financial assistance" within the meaning of Section 504, and more particularly,

2. That regulation provides, in pertinent part: "Federal financial assistance" means any grant, loan, contract (other than a procurement contract or a *contract of insurance* or

guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance . . . . .
45 C.F.R. § 84.3(h) (emphasis supplied).

the applicable HHS regulations. Specifically, Baylor contends that the Medicare and Medicaid funding which it admittedly receives are "insurance-type payments" and are therefore exempt from the statute's coverage by reason of the "contract of insurance" exclusion contained in HHS regulation 45 C.F.R. § 84.3(h). *See* note 2 *supra.*

The Medicare program is established under the terms of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* The statute describes the program as an "insurance program" designed to provide "basic protection against the costs of hospital and related posthospital services," available generally to all persons age 65 or over who are entitled to retirement benefits under Title II of the Social Security Act or under the railroad retirement system, and to all persons under 65 who have been entitled to disability benefits under Title II or the railroad retirement system for at least two years. 42 U.S.C. § 1395c. Part A of the Medicare program covers the provision of hospital insurance benefits, while Part B of the program provides supplementary medical insurance benefits.

The Medicaid program is established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* and it is a program by which the federal government gives grants to the states in order for them to provide medical assistance for the needy, under state plans conforming with federal requirements. Federal Medicaid funds are appropriated from general federal reserves. *See* 42 U.S.C. § 1396.

In considering whether either of these programs constitutes "Federal financial assistance," several preliminary observations may be made. First, it has been noted that Section 504, as a remedial statute, should be "broadly applied and liberally construed." *S–1 v. Turlington,* 635 F.2d 342, 347 (5th Cir.1981). Next, the discrimination prohibition language contained in Section 504 was expressly modeled after the equivalent language contained in Title VI of the Civil Rights Act, and Title IX of the Education Amendments of 1972, and consequently the case law developed under Title VI and Title IX may be referred to for guidance in explicating Section 504. *Brown v. Sibley,* 650 F.2d 760, 768 (5th Cir.1981). In addition, this Court may take into account the interpretation which HHS has given the statutory language "Federal financial assistance" over the years, for "a court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–5, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974).

With these principles in mind, there are several reasons supporting the conclusion that both Medicare and Medicaid are "Federal financial assistance" within the meaning of Section 504 and do not fall within the "contract of insurance" exclusion of 45 C.F.R. § 84.3(h). First, there are other HHS regulations which directly indicate that both Medicare [3] and Medicaid [4] are regarded as "Federal financial assistance." The most reasonable interpretation of the "contract of insurance" language would be one which would avoid conflict with these other regulations. Therefore, Medicare and Medicaid would not be excluded.

Second, the courts which have dealt with the question have generally regarded Medicare and Medicaid as federal financial assistance, and they typically have had little difficulty with the question. *See United States v. Cabrini Medical Center,* 497 F.Supp. 95, 96 n. 1 (S.D.N.Y.1980), *rev'd on other grounds,* 639 F.2d 908 (2d Cir.1981); *Cook v. Ochsner Foundation Hospital,* No. 70–1969 (E.D.La., Feb. 12, 1979), slip. op. at 2–3; *Flora v. Moore,* 461 F.Supp. 1104, 1115 (N.D.Miss.1978); *Bob Jones University v. Johnson,* 396 F.Supp. 597, 603 n. 21 (D.S.C. 1974), *aff'd without opinion,* 529 F.2d 514 (4th Cir.1975). *But see Trageser v. Libbie Rehabilitation Center,* 462 F.Supp. 424, 426 (E.D.Va.1977), *aff'd on other grounds,* 590 F.2d 87 (4th Cir.1978).

The legislative history of the Medicare program also supports the conclusion that

---

3. *See* 45 C.F.R. § 80, Appendix A, ¶ 121.

4. *See* 45 C.F.R. § 84, Appendix A, Subpart A, Definition 1.

Medicare and Medicaid are included in the meaning of federal financial assistance. The Medicare program was adopted in 1955, a year after passage of Title VI of the Civil Rights Act. Section 602 of Title VI specifically excepts any "contract of insurance" from serving as a basis for coverage of that statute. 42 U.S.C. § 2000d–1. Despite that language, comments made by legislators during debates on the Medicare bill state the view that Title VI would apply to hospitals and other institutions by virtue of their acceptance of federal funds in the form of Medicare payments. See 111 Cong. Rec. 15803, 15813 (1965) (remarks of Senators Ribicoff, Hart and Pastore, who were prominent in the adoption of Title VI in 1964).

Furthermore, there are characteristics of the Medicaid and Medicare programs which easily distinguish them from ordinary contracts of insurance. This is most evident in the case of Medicaid. Insurance contracts are characterized by the spreading of risks, among the various policyholders through the payment of premiums. See Group Life and Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 211, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979). Medicaid, on the other hand, is designed as a system of federal grants to states to subsidize state programs that provide health benefits to the needy. As such, it bears little relation to the contractually-based risk-spreading which is an essential element of insurance contracts. Medicare bears a greater resemblance to a traditional insurance arrangement, but it too is distinguishable. Medicare is a form of social insurance, funded by mandatory taxes upon employers and employees. See 26 U.S.C. §§ 3101(b), 3111(b), 1401(b). As with the Social Security system, the benefits which accrue to each individual worker, "though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation." Flemming v. Nestor, 363 U.S. 603, 609, 80 S.Ct. 1367, 1371–72, 4 L.Ed.2d 1435 (1960) (holding that Social Security benefits are a noncontractual interest and not a property right). Thus the Medicare program is not a contract of insurance entered into between the United States and either the ultimate beneficiaries or the recipient health care providers.

For these reasons, and in light of the broad construction which must be given to Section 504, this Court concludes that Medicare and Medicaid constitute federal financial assistance, within the meaning of that provision and the applicable regulations.

■ The final issue before this Court concerns the "program-specificity" of Section 504. Section 504 provides that no handicapped persons shall, by reason of their handicap, be subjected to discrimination "under any program or activity" receiving federal financial assistance. 29 U.S.C. § 794. As the Fifth Circuit recently ruled, this program-specific requirement means that a recipient of federal funding must comply with the statute's nondiscrimination provisions "when a discriminatory program is 'benefited' by Federal financial assistance or when a federally assisted program itself is infected by a discriminatory environment." Iron Arrow Honor Society v. Heckler, 702 F.2d 549, 562 (5th Cir.1983) (interpreting the identically-worded provision contained in Title IX of the Education Amendments of 1972). Baylor admits that its in-patient and emergency room services—the activities at its facility that HHS seeks to investigate—are paid for in part through Medicare and Medicaid. Since these activities are directly benefited by federal assistance, they are a proper subject of HHS investigation.

■ Despite Baylor's argument to the contrary, the right of HHS to investigate a complaint is not restricted when the patient-complainant is not a beneficiary of either of the federal assistance programs (i.e. Medicare or Medicaid) which serve as the basis for the recipient's obligation to comply with the statute. The "programs or activities" language in Section 504 refers to the programs or activities of the recipient of the federal funding; it does not refer to either the federal funding programs themselves, or to the ultimate beneficiaries of those programs. Consequently, HHS has the right to seek enforcement of Section

504 upon those programs or activities at Baylor which benefit from Medicare or Medicaid, without regard to whether a particular complainant is a direct beneficiary of one of those federal assistance programs.

### III.

In conclusion, this Court is of the opinion that the Government's motion for summary judgment must be granted. There are no material issues of fact in this case. The United States seeks the right to investigate into Baylor's compliance with Section 504 in connection with the provision of effective services for hearing-impaired persons in Baylor's in-patient and emergency room services. The United States is entitled to make that investigation.

It is so ORDERED.