**Donna M. DORER, Plaintiff,**

v.

**QUEST DIAGNOSTICS INCORPORATED, et al., Defendants.**

**No. CIV. PJM 96–3957.**

United States District Court, D. Maryland.

Sept. 29, 1998.

As Amended Nov. 24, 1998.

J. Stephen Simms, Vincent J. Columbia, Jr., Greber & Simms, Baltimore, MD, for Plaintiff.

Norman R. Buchsbaum, Baltimore, MD, for Defendants.

*MEMORANDUM OPINION*

MESSITTE, District Judge.

I.

Alleging race and disability discrimination in her employment, Donna M. Dorer has sued Quest Diagnostics Incorporated pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.,* the Rehabilitation Act of 1973 as amended, 29 U.S.C. §§ 701, *et seq.,* and the Americans with Disabilities Act of 1990, as amended (ADA), 42 U.S.C. §§ 12101 *et seq.* Quest

filed a Motion to Dismiss which the Court previously granted as to the Title VII and ADA claims, but which it deferred ruling upon with regard to the Rehabilitation Act claim. The Court asked for further submissions from the parties on the question of whether Quest's receipt of Medicare and Medicaid payments made it amenable to suit under the Rehabilitation Act.[1]

Having considered the Supplemental Memoranda submitted by the parties, the Court DENIES Quest's Motion to Dismiss Dorer's claim under the Rehabilitation Act.

## II.

To summarize from the Court's earlier opinion, the factual background is this:

Dorer, a white woman suffering from back pain, was employed by Quest from July 1992 to April 1995. She first worked at Quest's Rockville, Maryland location, then transferred to its Baltimore location where the alleged discriminatory acts took place. Dorer contends that, after she began working at the Baltimore location, her supervisor insinuated that she was not a good match for the location because of her race, told that her back pain was psychosomatic, and pressured her to work "exorbitant hours" despite her disability. In April, 1995, following a three-week long absence purportedly due to her back injury, Dorer lost her job. She contends she was terminated "solely upon her race and/or physical disability."

## III.

A. Having dismissed Dorer's employment discrimination claims under Title VII and the ADA on procedural grounds, the Court considers her remaining claim under the Rehabilitation Act.

B. Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794, provides in pertinent part that:

> No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be...subjected to discrimination under any program or activity receiving Federal financial assistance.

■ Accordingly, in order to state a claim under the statute, a plaintiff must establish not only that she has a disability, but that she was discriminated against in a program or activity receiving federal financial assistance. For present purposes, the issue of whether Dorer has a disability is not in dispute. The question before the Court is whether her former employer, Quest, is engaged in a program or activity receiving federal financial assistance.

C. What constitutes federal financial assistance for purposes of the Rehabilitation Act has been the subject of a number of decisions. *See generally* James Lockhart, Annotation, *"What Constitutes Federal Financial Assistance for Purposes of § 504 of Rehabilitation Act (29 U.S.C.A. § 794), Which Prohibits Any Program or Activity Receiving Federal Financial Assistance From Discriminating on Basis of Disability,"* 147 A.L.R. Fed. 205 (1998) (collecting cases). The precise question of whether the receipt of Medicare or Medicaid payments amounts to federal financial assistance within the meaning of the Act has also been considered. *Id.* at 254–59.

In 1984, the U.S. Court of Appeals for the Fifth Circuit, in *U.S. v. Baylor University Medical Center,* 736 F.2d 1039 (5th Cir.1984), *cert. denied* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985), held that a medical center receiving Medicare and Medicaid payments was receiving federal financial assistance within the meaning of the Act. *See also Bernard B., et al. v. Blue Cross and Blue Shield of Greater New York,* 528 F.Supp. 125 (S.D.N.Y.1981), *aff'd* 679 F.2d 7 (2d Cir.1982) (health insurer is subject to Act).

The *Baylor* Court relied heavily on "the legislative history of statutes prohibiting discrimination in federally funded programs— Title VI, Title IX, and the Rehabilitation Act, judicial interpretation of these, and regulations adopted pursuant to them." 736

---

1. The Court was also asked to defer ruling based on extended settlement discussions which the parties were engaged in connection with this and related litigation. Since those discussions were only partially successful and did not conclude the present litigation, the Court proceeds to decide the pending issue.

F.2d at 1042. While the Court noted that "hospitals and other medical facilities in the provision of health care services" were "one specific area of discrimination in services provided by recipients at the time Title VI was passed," *Id.* at 1044, it by no means limited its holding to hospitals or medical facilities.[2] *Baylor* can unquestionably be read to stand for the proposition that receipt of Medicare or Medicaid funds by any entity (even one at a remove from direct patient care) will bring the Rehabilitation Act into play.

Quest, however, argues that its receipt of Medicare and Medicaid payments is not a program or activity receiving federal assistance, citing to this effect *Trageser v. Libbie Rehabilitation Center, Inc.,* 462 F.Supp. 424 (E.D.Va.1977), *aff'd on other grounds,* 590 F.2d 87 (4th Cir.1978), *cert. denied* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). In *Trageser,* the U.S. District Court for the Eastern District of Virginia (Richmond Division), albeit with minimal discussion, held that the federal funds received by a nursing home were not "federal financial assistance" but were instead payment for services rendered. *Trageser,* however, is a distinctly minority holding. Indeed, in *Matter of Baby K,* 832 F.Supp. 1022 (E.D.Va.1993), *aff'd on other grounds,* 16 F.3d 590 (4th Cir.1994), *cert. denied sub nom, Baby K. Through Mr. K v. Ms. H.,* 513 U.S. 825, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994), the Alexandria Division of the same court suggested that Medicare or Medicaid payments would constitute federal financial assistance. Cases from other circuits are in accord with *Baylor* that receipt of such payments constitutes the requisite federal financial assistance under the Act. *See e.g. Vacco v. Mid Hudson Medical Group,* 877 F.Supp. 143, 149–50 (S.D.N.Y. 1995); *Glanz v. Vernick,* 756 F.Supp. 632 (D.Mass.1991); *see also* Annotation, *supra,* 147 A.L.R. Fed. 205 and cases cited therein.

While it is true that these cases deal with hospitals and clinics, Quest offers no meaningful reason why laboratories such as Quest, as opposed to hospitals and clinics, should be exempt from the broad remedial thrust of the Rehabilitation Act. Quest concedes that it provides clinical diagnostic testing to doctor's offices, hospitals and nursing homes. Were a laboratory essentially identical to Quest's to be located within the walls of a hospital, medical center, or nursing home—a distinctly possible arrangement—the applicability of the Rehabilitation Act to its operations would be beyond discussion.

█ Dorer's Rehabilitation Act claim will stand. Since no exhaustion of administrative remedies is required under the Rehabilitation Act as opposed to Title VII, *see Greater Los Angeles Council on Deafness, Inc. v. Community Television of So. Cal.,* 719 F.2d 1017, 1021 (9th Cir.1983), *cert. denied sub. nom., Gottfried v. United States,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984), *Roe v. County Commission of Monongalia Co.,* 926 F.Supp. 74, 77 (N.D.W.Va.1996), her claim remains viable.

Quest's Motion to Dismiss, which has already been granted, will now be DENIED IN PART.

---

2. In 1988, 29 U.S.C. § 794 was amended, at which time, among other things Subsection (b) defining "program or activity" was added. Insofar as it relates to the present case, the term "program or activity" was *inter alia* defined to mean the "operations of ... an entire corporation, partnership, or other private organization, or an entire proprietorship ... which is principally engaged in the business of ... health care."

*See* 29 U.S.C. § 794(b)(3)(A)(ii). Although the legislative history of the amendment does not expressly define what constitutes "health care," the Senate Report on the bill by way of example discusses the applicability of the law to private hospitals and nursing homes. See Sen. Rep. No. 100–64 at 20, reprinted in 1988 U.S.C.C.A.N. Legislative History 20.