ETHEL KORNBLUT, Individually and as Administratrix of the Estate of FRED KORNBLUT, Deceased, Respondent, et al., Plaintiffs, v CHEVRON OIL COMPANY, Appellant-Respondent, and LAWRENCE ETTINGER, INC., Appellant, et al., Defendants.

Second Department, July 3, 1978

### APPEARANCES OF COUNSEL

*Rivkin, Leff & Sherman (John F. Morrison* of counsel), for appellant-respondent.

*George S. Pickwick (Joseph D. Ahearn* of counsel), for appellant.

*Dweck & Sladkus (Jack S. Dweck, Edwin McMahon Singer* and *Vincent R. Coffey* of counsel), for respondent.

### OPINION OF THE COURT

HOPKINS, J. P.

The plaintiff-respondent has recovered a judgment after a jury trial in the sum of $519,855.98, including interest, costs and disbursements, against Chevron Oil Company (Chevron) and Lawrence Ettinger, Inc. (Ettinger) (hereafter collectively referred to as defendants) for damages arising from the death and injuries suffered by Fred Kornblut, her husband. The case went to the jury on the theory that the decedent was the third-party beneficiary of a contract between Chevron and the New York State Thruway Authority and a contract between Chevron and Ettinger.

The defendants appeal, claiming that the decedent was not a third-party beneficiary of the contracts and that, even so, they could not have reasonably foreseen the injuries to the decedent under the circumstances of this case. We reverse and dismiss the complaint. Although for certain purposes and under certain clauses of the contracts the decedent was a third-party beneficiary, no contractual obligation imposed liability on the defendants for decedent's injuries and death, neither of which could reasonably have been in the contemplation of the contracting parties.

I·

On the afternoon of an extremely warm day in early August, 1970 the decedent was driving northward on the New

York State Thruway. Near Sloatsburg, New York, at about 3:00 P.M., his automobile sustained a flat tire. At the time the decedent was accompanied by his wife and 12-year-old son. The decedent waited for assistance in the 92 degree temperature.

After about an hour a State Trooper, finding the disabled car, stopped and talked to the decedent. The trooper radioed Ettinger, which had the exclusive right to render service on the Thruway under an assignment of a contract between Chevron and the Thruway Authority. Thereafter, other State Troopers reported the disabled car and the decedent was told in each instance that he would receive assistance within 20 minutes.

Having not received any assistance by 6:00 P.M., the decedent attempted to change the tire himself. He finally succeeded, although he experienced difficulty and complained of chest pains to the point that his wife and son were compelled to lift the flat tire into the trunk of the automobile. The decedent drove the car to the next service area, where he was taken by ambulance to a hospital; his condition was later diagnosed as a myocardial infarction. He died 28 days later.

Plaintiff sued, *inter alia,* Chevron and Ettinger alleging in her complaint causes of action sounding in negligence and breach of contract. We need not consider the issue of negligence, since the Trial Judge instructed the jury only on the theory of breach of contract, and the plaintiff has recovered damages for wrongful death and the pain and suffering only on that theory.

The plaintiff urged at the trial, and contends on this appeal, that the decedent, as a user of the Thruway, was a third-party beneficiary of the contract between the Thruway Authority and Chevron, whereby Chevron was designated as the exclusive supplier of gasoline and services along the stretch of the Thruway where the decedent's automobile became disabled. The plaintiff argues that the defendants breached the contract by not rendering service to the decedent in accordance with the contract within 30 minutes from the time the call for assistance was made, and that the decedent's exertions occurred on account of the breach, from which the death and injuries proximately were the result.

We need not analyze the evidence at the trial at length. It suffices that we find that the evidence supports the jury's implicit determination that the defendants did not render

service to the decedent in the manner and within the time stipulations set forth in the contract. The engrossing questions on this appeal, rather, are whether the decedent was a third-party beneficiary of the defendants' promises and whether, assuming the decedent's status as a third-party beneficiary, the decedent's resulting death and injuries may be considered to have reasonably been within the contemplation of the parties.

## II

The plaintiff chose to seek recovery on the theory that the decedent was a third-party beneficiary of the contract between Chevron and the Thruway Authority, and in making that choice risked the consequences which follow the theory of contractual obligation (cf. Prosser, Torts [4th ed], § 92, pp 618-622). We must treat the Thruway Authority as a creation of the State, carrying out a governmental function (Public Authorities Law, § 353) including, among other things, the construction of "suitable facilities for gas stations", which "shall be publicly offered for leasing for operation * * * under rules and regulations to be established by the authority" (Public Authorities Law, § 354, subd 10), and the operation and maintenance of the Thruway, either by its own equipment or by agreement with independent contractors, or both (Public Authorities Law, § 360). Hence, the contract between Chevron and the Thruway Authority and the contract between Chevron and Ettinger must be considered in the light of the law controlling the relationship between the government and its contractor and a third party claiming injury arising out of a breach of the contract.

The Restatement of Contracts denies recovery by a third party who is a member of the public, such as the decedent, derived from a breach of an agreement between a State and its contractor, unless the third party establishes either (1) an intention manifested "in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public" or (2) that the contract "is with a municipality to render services the non-performance of which would subject the municipality to a duty to pay damages to those injured thereby" (Restatement, Contracts, § 145, p 173). The plaintiff's burden, under the facts of this case, must fall within the first alternative of this rule.

The rule shaped by the Restatement fairly reflects the

precedents in New York (see, e.g., 4 Corbin, Contracts, § 827, pp 302-310). It is true that some of the expressions in the earlier cases are wider in effect than the rule laid down by the Restatement.[1] (Cf. *McMahon v Second Ave. R. R. Co.,* 75 NY 231; *Coster v Mayor,* 43 NY 399.) But the doctrine in the language stated in *Moch Co. v Rensselaer Water Co.* (247 NY 160, 164), is more circumscribed: "In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary (cf. *Fosmire v. Nat. Surety Co.,* 229 N. Y. 44). It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost."

We must look, then, to the terms of the contract sought to be enforced. Chevron agreed to provide "rapid and efficient roadside automotive service on a 24-hour basis from each gasoline service station facility for the areas * * * when informed by the AUTHORITY or its police personnel of a disabled vehicle on the Thruway". Chevron's vehicles are required "to be used and operated in such a manner as will produce adequate service to the public, as determined in the AUTHORITY's sole judgment and discretion". Chevron specifically covenanted that it would have "sufficient roadside automotive service vehicles, equipment and personnel to provide roadside automotive service to disabled vehicles within a maximum of thirty (30) minutes from the time a call is assigned to a service vehicle, subject to unavoidable delays due to extremely adverse weather conditions or traffic conditions." The contract prescribed the rates for the service, among which was a charge of $3 on roadside calls between 8 A.M. and 6 P.M., and $5 on such calls between 6 P.M. and 8 A.M. Moreover, Chevron undertook to stop and service any vehicle in distress while en route to or from a roadside call. In the event an improper charge was made by Chevron, it agreed to make a refund to the person overcharged. All of these terms were a

---

1. See, e.g., *Little v Banks* (85 NY 258, 263): "Contractors with the State, who assume, for a consideration received from the sovereign power, by covenant, express or implied, to do certain things, are liable, in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance."

part of the general agreement between Chevron and the authority relating to the operation of the gas stations enumerated.

In interpreting the contract, we must bear in mind the circumstances under which the parties bargained. The New York Thruway is a limited access toll highway, designed to move traffic at the highest legal speed, with the north and south lanes separated by green strips. Any disabled vehicle on the road impeding the flow of traffic may be a hazard and inconvenience to the other users. The income realized from tolls is generated from the expectation of the user that he will be able to travel swiftly and smoothly along the Thruway. Consequently, it is in the interest of the authority that disabled vehicles will be repaired or removed quickly to the end that any hazard and inconvenience will be minimized. Moreover, the design and purpose of the highway make difficult, if not impossible, the summoning of aid from garages not located on the Thruway. The movement of a large number of vehicles at high speed creates a risk to the operator of a vehicle who attempts to make his own repairs, as well as to the other users. These considerations clearly prompted the making of contracts with service organizations which would be located at points near in distance and time on the Thruway for the relief of distressed vehicles.

Thus, it is obvious that, although the authority had an interest in making provision for roadside calls through a contract, there was also a personal interest of the user served by the contract. Indeed, the contract provisions, regulating the charges for calls and commanding refunds be paid directly to the user for overcharges, evince a protection and benefit extended to the user only. Hence, in the event of an overcharge, the user would be enabled to sue on the contract to obtain a recovery (cf. *Pond v New Rochelle Water Co.,* 183 NY 330; *Rochester Tel. Co. v Ross,* 195 NY 429). Here the contract contemplates an individual benefit for the breach running to the user.

It is, however, another matter when a consequence, such as wrongful death, personal injury or property damage, not directly referred to in the contract, is the subject of the suit based on a breach of the contract. Sometimes, as in the breach of warranty cases, it is said that the personal injury does not lie within the scope of the terms of the warranty *(Birdsinger v McCormick Harvesting Mach. Co.,* 183 NY 487); sometimes it

is said that special circumstances are present in the form of notice to the parties that greater damage may be suffered beyond the usual damages based on the difference between the value of the product sold and the value of the product actually received *(Ryan v Progressive Grocery Stores,* 255 NY 388).[2] In other instances, the terms of the contract carried a direct reference to property damages which might be sustained by a member of the public *(Smyth v City of New York,* 203 NY 106).* The wording is particularly significant in the distinction made between payment and performance bonds (cf. *Daniel-Morris Co. v Glens Falls Ind. Co.,* 308 NY 464; *Novak & Co. v Travelers Ind. Co.,* 56 AD2d 418, mot for lv to app den 42 NY2d 806).

By choosing the theory of recovery based on contract, it became incumbent on the plaintiff to show that the injury was one which the defendants had reason to foresee as a probable result of the breach, under the ancient doctrine of *Hadley v Baxendale* (9 Exch R 341), and the cases following it *(Mortimer v Otto,* 206 NY 89; *Chapman v Fargo,* 223 NY 32), in distinction to the requirement of proximate cause in tort actions *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 346; cf. *Pagan v Goldberger,* 51 AD2d 508).

In the context of this case, the absence of any provision disclosing an intent to place the onus of liability on Chevron on behalf of a user of the Thruway for breach of the covenant to render service within the time and in the manner stipulated by the contract, strongly opposes a recovery for consequential damages for the death and injury of the decedent. The death of the decedent on account of his exertion in the unusual heat of the midsummer day in changing the tire cannot be said to have been within the contemplation of the contracting parties as a reasonably foreseeable result of the failure of Chevron or its assignee to comply with the contract (cf. *Martinez v Socoma Cos.,* 11 Cal 3d 394; *Pajewski v Perry,* 363 A2d [Del.]); moreover, in the words of Chief Judge CARDOZO, in *Moch Co. v Rensselaer Water Co.* (247 NY 160, 165, *supra),* "[a]n intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose (cf. *Hone v Presque Isle Water Co.,* 104 Me. 217, at 232)."

---

**2.** It should be also noted that in warranty cases, the statute has reference to recovery for personal injury (Uniform Commercial Code, § 2-715, subd [2], par [b]).

The case comes down to this, then, in our view: though the decedent was the intended beneficiary to sue under certain provisions of the contract—such as the rate specified for services to be rendered—he was not the intended beneficiary to sue for consequential damages arising from personal injury because of a failure to render service promptly.

## III

Under these circumstances, the judgment must be reversed and the complaint dismissed, without costs or disbursements.

MARTUSCELLO, J. (concurring). Plaintiff's decedent stopped his car on the New York State Thruway because of a flat tire. He informed the State Police of his need for road service and, when this was not forthcoming after several hours, he replaced the flat tire himself. He subsequently sustained a heart attack and died.

Plaintiff recovered judgment (upon a jury verdict in her favor) against both Lawrence Ettinger, Inc. and its assignor, Chevron Oil Company. The latter had a contract with the New York State Thruway Authority whereby it agreed that "it will have sufficient roadside automotive service vehicles, equipment and personnel to provide roadside automotive service to disabled vehicles within a maximum of thirty (30) minutes from the time a call is assigned to a service vehicle". The court had charged that decedent was a third-party beneficiary of the contract between the New York State Thruway Authority and the appellants, and left to the jury (on the issue of liability) only the questions of whether appellants had breached their contract, whether such breach (if one had occurred) was the proximate cause of the death and whether the death was a foreseeable result of such breach.

I believe that the charge that the decedent was a third-party beneficiary was incorrect and, further, that the complaint should be dismissed.

The only provisions in the contract concerning Chevron's failure to provide the stated services were that, in such case, the authority reserved the right to provide them by "any means at its discretion" and from any available source, and that the "cost of such substituted service shall be charged to * * * [Chevron]". It is my opinion that such language does not show an intent to confer a right upon a patron of the Thruway to recover for personal injuries merely because of a

breach of Chevron's contractual obligation to provide road service within a stated time.

In order to fit within the third-party beneficiary theory (see *Lawrence v Fox,* 20 NY 268), the contract must manifest an intent by the obligee (here, the Thruway Authority) that the obligor (here, Chevron or its assignee) furnish to the public (here, patrons of the Thruway) a benefit which is "primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost" *(Moch Co. v Rensselaer Water Co.,* 247 NY 160, 164 [CARDOZO, Ch. J.]). I see no such intent in the express provisions of the contract; nor do I deem it as a necessary implication thereof.

The fact that service to disabled vehicles is required to be furnished within a stated time is not indicative of a contractual obligation to motorists; it is the only rational method of describing what services the service station was required to perform.

Thus, there is no more indication of intent to furnish third-party beneficiary rights in this case than there are in the cases where a municipality contracts with an outside party to provide services which will benefit its citizens or the public, e.g., water supply *(Moch Co. v Rensselaer Water Co., supra)* and illumination of public roads *(Kraye v Long Is. Light. Co.,* 42 AD2d 972).

LATHAM and O'CONNOR, JJ., concur with HOPKINS, J. P.; MARTUSCELLO, J., concurs in the result, with an opinion.

Judgment of the Supreme Court, Kings County, entered January 21, 1977, reversed, on the law, without costs or disbursements, and complaint dismissed.