Fuchsberg, J.
(dissenting). The heart of the issue on this *855 appeal is whether, under the circumstances, the obligations undertaken by respondents Chevron and Ettinger pursuant to Chevron’s contract with the State Thruway Authority were sufficient to impose liability on the respondents for decedent’s injuries and for his wrongful death. It comes to us in the context of a case in which the knowing and long delay of an officially contracted road service to respond to a disabled vehicle on the Thruway compelled the vehicle’s invalided operator to engage in what proved to be a fatal course of self-help. To the determination of the liability question thus posed I would summon the following principle from the Restatement of the Law of Agency: "An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize” (emphasis mine). (Restatement, Agency 2d, § 354; see, also, § 353.) Additionally, I observe that the Reporter’s Notes indicate that it is not alone "[t]he terms of a contract with the principal [which] measure the liability of the agent to the third person”. Rather, it tells us that the crucial fact is that "[t]he agent causes the damage by undertaking to afford protection and subsequently failing to give it” (p 126).
I would therefore start and end my analysis with a consideration of whether all of the five factors defined by section 354 emerge from the circumstances under which the undertaking to act was entered into in this case — i.e., (1) whether "some action was necessary for the protection of the person of another”, here the plaintiff motorist, (2) whether there was reliance on Chevron’s agreement to act, particularly since it was expressly understood that the agency thus granted was to be exclusive, (3) whether there was in fact a subsequent unexcused failure to act, (4) whether such failure created an unreasonable risk of harm, and (5) whether those who undertook the responsibility to act should have been aware of the risk.
Taking these criteria ad seriatim, we first note that the need for the protection of highway users like the decedent is apparent from the. fact that, as the Appellate Division itself *856 put it, "the New York Thruway is a limited access toll highway, designed to move traffic at the highest legal speed * * * [so that] Any disabled vehicle on the road impeding the flow of traffic may be a hazard” (62 AD2d 831, 836). It requires no leap of the imagination to appreciate that the danger is especially great for the traveler in the stranded automobile.
Second, as to the element of reliance, the contract was explicit in its grant of an exclusive agency to Chevron (and, through it, to Ettinger) to provide roadside automotive service. Indeed, in return, Chevron agreed that it would provide a sufficient number of emergency vehicles to assure that its service would be so "rapid” and "efficient” that a response to the scene of a breakdown like that of the decedent’s generally would take place within a maximum of 30 minutes; it certainly did not contemplate the more than three hours of nonfeasance that already had elapsed by the time the decedent here was injured.
Third, addressing the "subsequent unexcused failure to act”, the absence of response to the admitted call for help is undisputed, and whether it was excusable under the agreement appears to have been a matter peculiarly appropriate for resolution by the jury.
Fourth, the unreasonable risk of harm from failure to act was to be seen in the rapidity with which cars could be expected to move on this superhighway, the paucity of access roads by which motorists could find other avenues of assistance, the commonness of vehicle malfunctions and the frequency with which automobiles are lawfully operated by persons whose lack of physical vigor, as with decedent here, would make resort to self-help in a roadway emergency a potentially complicating rather than an alleviating factor.
Fifth, realization of the risk to one in the position of the decedent was not only to be inferred from the foregoing, but is almost inherent in the actual language of the agreement itself, which, among other things, speaks to Chevron’s obligation to avoid "endangering * * * the travelling public”.
Reliance on this matching of circumstances and the rule that the Restatement bespeaks is not only consonant with other respected authority (see, e.g., United States v Hull, 195 F2d 64, 69 [Magruder, Ch. J.]; Erie R. Co. v Stewart, 40 F2d 855, 857), but it is also not interdicted by New York law. For one thing, Moch Co. v Rensselaer Water Co. (247 NY 160), on *857 which defendants rely, espouses a view which the criticisms of posterity have not left unmarred (see Seavey, Mr. Justice Cardozo and the Law of Torts, 52 Harv L Rev 372, 391-393 [describing the decision as a departure from Cardozo’s “accustomed method of facing the realities”]; Doyle v South Pittsburgh Water Co., 414 Pa 199, 212-214; Reimann v Monmouth Consolidated Water Co., 9 NJ 134, 140, 154 [Vanderbilt, Ch. J., and Heher, J.]; see, generally, Seavey, Waterworks Cases and Stare Decisis, 66 Harv L Rev 84).
In any event, Moch is distinguishable on its facts. For, though under the agreement Chevron’s service was being provided at the behest of the Thruway Authority, it was to be furnished directly to, and paid for by, the decedent and other similarly situated highway users. In contrast, in Moch the obligation of the party who was to furnish the water which was the subject matter of the contract was to do so directly to the municipality with which it had made its contract, and not to residents like the plaintiff to whom the city was free to supply it thereafter.
Moreover, adherence to the Restatement’s considered views requires no more than a return to first principles (Little v Banks, 85 NY 258; see, also, Mollino v Ogden & Clarkson Corp., 243 NY 450, 455-456).
Finally, it seems to me that to ignore these dictates is to perpetuate an unwarrantedly rigid adherence to legal categories in situations where the less flexible doctrines of the law of contracts, of which the law of agency is but an offshoot, are necessarily intertwined with the more fluid ones that distinguish the law of torts (see People v Hobson, 39 NY2d 479, 489). All the more is this so in the case before us now, since the frame of circumstantial reference in which the contract arose could leave little doubt that a departure from the contractual obligation would give rise to tortious consequences.
I would therefore find, as Mr. Justice Aronin did at Trial Term, that the plaintiff proved a prima facie case, and, accordingly, would reverse the order appealed from and remit the case to the Appellate Division for consideration of the facts.
Order affirmed, etc.