WESTHAMPTON HOUSE, INC.,
Plaintiff,

v.

Honorable Hugh L. CAREY, as Governor of the State of New York; County of Suffolk, State of New York; Peter F. Cohalan, County Executive of the County of Suffolk, Individually and in His Official Capacity; Rudolph M. Kammerer, Commissioner of the Department of Public Works of the County of Suffolk, Individually and in His Official Capacity; Department of Environmental Conservation of the State of New York; Donald J. Middleton as Regional Director of the New York State Department of Environmental Conservation, Region I; United States Army Corps of Engineers; Colonel Walter M. Smith, Jr., as District Engineer, New York District, United States Army Corps of Engineers, Defendants.

No. CV–80–2212.

United States District Court, E. D. New York.

Oct. 16, 1980.

Robert Rivkin, San Francisco, Cal., for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York by Beryl Kuder, Asst. Atty. Gen., New York City, for defendant State of New York.

David J. Gilmartin, Suffolk County Atty., Hauppauge by Jane E. Conway, Smithtown, for defendant Suffolk County.

Edward R. Korman, U. S. Atty. by Richard P. Caro, Asst. U. S. Atty., Brooklyn, N. Y., for defendant United States of America.

## DECISION AND ORDER

BRAMWELL, District Judge.

The instant motion for a mandatory preliminary injunction involves this Court in a bureaucratic snarl engendered principally by the forces of nature. The plaintiff, a cooperative apartment housing 74 families, seeks this Court's assistance in its battle to obtain a means of diverting the waters of Long Island's South Shore from intruding upon its domain. Essentially, this motion asks this Court to direct one of the defendants to replenish the eroding sand fronting the plaintiff in order to protect the plaintiff from the potentially destructive impact of the nearby ocean's waters.

In this circuit, a movant seeking a preliminary injunction must come forward with a showing of:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980); *Seaboard World Airlines, Inc. v. Tiger International, Inc.*, 600 F.2d 355 (2d Cir. 1979); *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973). Any formulation of the above cited test requires the movant to set forth a legally cognizable basis upon which it clearly could be entitled to the equitable relief sought. Accordingly, this Court initially will assess whether the plaintiff has established such a substantive predicate.

---

* The number in parentheses denotes references to the transcript of the Hearing held in this matter.

In attempting to sustain this burden, the plaintiff has asserted that its right to the requested relief emanates from Federal Flood Control Legislation, 33 U.S.C. §§ 701–707 (1976) and, alternatively, from principles of contract law. Under the federal claim, the plaintiff has asked this Court to direct the Suffolk County defendants to declare the situation giving rise to this case an "emergency" so as to cause defendant United States Army Corps of Engineers to take appropriate affirmative action pursuant to 33 U.S.C. § 701n (1976).

■ The hearing held in this matter on September 8 and 10, 1980, however, convinced this Court that it would be improper to require any governmental authority to classify the Westhampton House situation as an "emergency." This is so because the evidence and argument on this issue at the hearing made it clear that the sand erosion at Westhampton House constitutes a "maintenance" problem. This Court so intimated during the September 8 proceedings (45); * it now conclusively so finds. Accordingly, plaintiff's request pursuant to 33 U.S.C. § 701n (1976) is without merit.

Proceeding from the assumption that the Westhampton House situation evolved from improper maintenance, the plaintiff contends that it is entitled to the relief it seeks due to the alleged existence of agreements apparently vesting the obligation to maintain the plaintiff's beach front with the Suffolk County defendants. Exhibits A, B, C and D introduced into evidence by the State defendants seem to manifest such agreements.

Therefore, on the contract law claim, the threshold issue in determining the plaintiff's entitlement to the relief it seeks narrows to whether the plaintiff has standing to enforce the alleged contracts that were entered into by the defendants. Plaintiff, not being a party to these arrangements, contends it has such standing as a third-party beneficiary.

■ The right of a third-party beneficiary to enforce a contract long has been recognized in New York. *See Seaver v. Ransom*, 224 N.Y. 233, 120 N.E. 639 (1918); *Lawrence v. Fox*, 20 N.Y. 268 (1859). A third-party beneficiary, however, "may recover under New York law only where the parties to the contract intend to confer a benefit upon him; he may *not* sue on a contract when the benefit is purely incidental to the performance of the contract". *Compagnie Nationale Air France v. Port of New York Authority*, 427 F.2d 951, 954 (2d Cir. 1970); *See Associated Flour Haulers & Warehousemen v. Hoffman*, 282 N.Y. 173, 180, 26 N.E.2d 7, 10 (1940).

This same standard applies when parties claim to be third-party beneficiaries of contracts made by governmental entities. In *Moch Co. v. Rennselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896 (1928), Judge Cardozo recognized that

[i]n a broad sense it is true that every [government] contract . . . is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit . . . must be one that is not merely incidental and secondary. It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost.

*Id.* at 164, 159 N.E. at 897 (citations omitted).

The recent case of *Kornblut v. Chevron Oil Co.*, 62 App.Div.2d 831, 407 N.Y.S.2d 498 (2d Dept. 1978), *aff'd on the opinion of the court below*, 48 N.Y.2d 853, 400 N.E.2d 368, 424 N.Y.S.2d 429 (1979), *rev'g* 88 Misc.2d 651, 389 N.Y.S.2d 232 (1976), provides further insight into the extent to which a party may claim to be a beneficiary of a public contract. Categorizing her husband as a third-party beneficiary of a contract between the defendants and the New York State Thruway Authority, the *Kornblut* plaintiff alleged that the defendant's breach of the contract, by its failure to provide adequate and timely road service, resulted in the death of her husband. *Id.* at 833, 407 N.Y.S.2d at 500. Interpreting the contract between the defendants and the Thruway Authority, the Appellate Division concluded that "there was . . . a personal interest of the user [of state roads] served by the contract" finding that

the contract provisions regulating the charges for [road service] calls and commanding refunds be paid directly to the user for overcharges, evince a protection and benefit extended to the user only. Hence, in the event of a overcharge, the user would be enabled to sue on the contract to obtain a recovery.

*Id.* at 836, 407 N.Y.S.2d at 502. (citation omitted)

The *Kornblut* Court found, however, that it was "another matter when a consequence, such as wrongful death, personal injury or property damage, not directly referred to in the contract, is the subject of the suit based on a breach of the contract." *Id.* Examining the contract between defendants and the Thruway Authority to find whether its provisions made any reference to liability for such consequences, the court concluded that:

the absence of any provision disclosing an intent to place the onus of liability on [the defendant] on behalf of the user of the Thruway for breach of the covenant to render service within the time and in the manner stipulated by the contract, strongly opposes a recovery for consequential damages for the death and injury of the decedent. The death of the decedent . . . cannot be said to have been a reasonably foreseeable result of the failure of defendant or its assignee to comply with the contract; moreover, in the words of Chief Judge CARDOZO . . . , "[a]n intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose."

*Id.* at 837, 407 N.Y.S.2d at 503.

In the light cast by *Kornblut*, this Court carefully has examined State defendant's

**218**

Exhibits A–D and has found *no* provisions or language in said exhibits to indicate that members of the general public could successfully predicate an action on their contents. In this regard, it is noteworthy that, while the alleged agreements contained within State defendant's Exhibits A–D do contain provisions dealing with liability for damage emanating from the construction of beach improvements, the documents are totally devoid of language concerning the liability of the parties for failure to maintain those improvements.

■ Given this absence of language reflecting an intent on behalf of any of the defendants to assume liability to the general public for improper maintenance, this Court cannot conclude that the benefit conferred on the plaintiff by these agreements was "primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly [to the plaintiff] if the benefit is lost," *Moch Co. v. Rennselaer Water Co.*, 247 N.Y. 160, 164, 159 N.E. 896, 897 (1928). Based upon this finding, this Court concludes that the plaintiff cannot be classified as a third-party beneficiary of the alleged agreements between the defendants. Accordingly, the Court must find that the plaintiff lacks standing on its contract claim. As a result, the plaintiff cannot establish a likelihood of success on said claim.

Therefore, for the foregoing reasons, it is hereby

ORDERED that the plaintiff's motion for a preliminary injunction is DENIED.