Phyllis CHAPLIN, on behalf of herself and all others similarly situated; and Epilepsy Foundation of America, Plaintiffs,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.; Charles Luce, individually and in his capacity as Chairman of The Board of Trustees of Consolidated Edison Company of New York, Inc., Arthur Hauspurg, individually and in his capacity as President of Consolidated Edison Company of New York, Inc.; Regina Fredrickson, individually and in her capacity as Director of Personnel of Consolidated Edison Company of New York, Inc.; Thomas M. O'Sullivan, individually and in his capacity as Assistant Director of Personnel of Consolidated Edison Company of New York, Inc.; John Holbrook, individually and in his capacity as a Personnel Representative of Consolidated Edison Company of New York, Inc.; Herman Halpern, individually and in his capacity as Medical Director of Consolidated Edison Company of New York, Inc., Defendants.

Civ. A. No. 79 Civ 730 (MEL).

United States District Court,
S.D. New York.

Feb. 10, 1984.

Legal Aid Society, Kalman Finkel, Atty. in Charge, Civ. Div., John E. Kirklin, Director of Lit., Civ. Appeals & Law Reform Unit, Morton B. Dicker, Atty. in Charge, New York City, for plaintiffs; James C. Francis, IV and Jonathan Ben-Asher, New York City, of counsel.

Ernest J. Williams, New York City, for defendants; Sheila Solomon Rosenrauch, New York City, of counsel.

LASKER, District Judge.

In this action based on section 504 of the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. § 794 (1976 & Supp. III), and on contracts entered into between the federal government and defendant Consolidated Edison Company of New York ("Con Ed") pursuant to section 503 of the Act, 29 U.S.C. § 793 (1976 & Supp. III), Phyllis Chaplin, on behalf of herself and all others similarly situated, and the Epilepsy Foundation of America seek compensatory and injunctive relief based on Con Ed's refusal to hire Chaplin and other qualified job applicants who have epilepsy. As originally filed, the complaint alleged a cause of action based directly upon section 503 of the Act, as well as a cause of action based on section 504. This Court denied Con Ed's motion to dismiss the section 503 cause of action, holding, *inter alia*, that section 503 provides a private cause of action to victims of handicap discrimination.[1] Thereafter, the Court of Appeals for this Circuit

ruled to the contrary in a separate case, holding that no private cause of action was created by section 503 of the Act.[2]

Following the Second Circuit's ruling in *Davis*, plaintiffs filed an amended complaint with leave of court, adding a cause of action based upon plaintiffs' alleged status as third-party beneficiaries of contracts between Con Ed and the federal government in which Con Ed has promised, as required by § 503 of the Act, not to discriminate against qualified job applicants on the basis of handicaps. Con Ed now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.") to dismiss the amended complaint. Con Ed contends that the contracts in question do not confer third-party beneficiary status on plaintiffs. Con Ed also contends that the section 504 claim should be dismissed because the federal financial assistance received by Con Ed is inadequate to support a section 504 claim, and because in any event the position for which Chaplin applied was not funded with federal assistance. Plaintiffs cross-move pursuant to Fed.R.Civ.P. 37 to compel defendants to submit to deposition on the subject of the nature of the federal assistance received by Con Ed and the use to which it has been put in Con Ed's operations.

For the reasons set forth below, Con Ed's motion to dismiss is granted as to plaintiffs' third-party-beneficiary claim and denied without prejudice as to plaintiffs' section 504 claim. Plaintiffs' motion to compel discovery is granted.

I.

Section 503(a) of the Act, 29 U.S.C. § 793(a), requires that certain federal contracts include a clause by which the party contracting with the federal government agrees to take affirmative action to hire and promote handicapped persons.[3] Under section 503(b) of the Act, the Department

---

**1.** 482 F.Supp. 1165 (S.D.N.Y.1980).

**2.** *Davis v. United Air Lines, Inc.,* 662 F.2d 120 (2d Cir.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982).

**3.** Section 503(a) of the Act provides in part:

"Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and non-personal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with

of Labor is required to investigate complaints filed by handicapped persons as to a contractor's failure to comply with these provisions of its contract.[4] A representative contract between Con Ed and the General Services Administration contains the following provisions, as required by 503(a):

"ARTICLE 26. EMPLOYMENT OF THE HANDICAPPED. (a) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

"(b) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973, as amended."[5]

Plaintiffs allege that Con Ed has failed to fulfill its duty under contracts such as these, and claim that as third-party benefi-ciaries of the contracts they are entitled to enforce Con Ed's nondiscrimination and affirmative action obligations. They argue that the language of the contract evidences a clear intent to benefit handicapped persons, and that under settled principles of contract law the intended beneficiaries of a contract have the same right to enforce its terms as the contracting parties.[6] Con Ed, while agreeing that the intent of the parties is the controlling factor, contends that the parties intended to create a duty on Con Ed's part owing only to the federal government, not to individual job applicants, to promote the hiring of handicapped persons.

Our analysis of whether the parties to the contracts intended to create rights directly enforceable by individual victims of discrimination must be guided by the Court of Appeals' decision in *Davis v. United Air Lines, Inc.*,[7] which addressed a closely-related question in determining that section 503 of the Act created no private right of action. In so holding, the *Davis* Court examined the four factors set out in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): first, "is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted;' "[8] second, "is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;"[9] third, "is it consistent with the underlying purposes of the legislative

---

the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of the title."

4. Section 503(b) of the Act provides:
"If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individuals may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto."

5. Exhibit F to Affidavit of James C. Francis IV, counsel for plaintiffs. As originally submitted, the record on the instant motion did not include an example of the contracts whose provisions are at issue here. At oral argument Con Ed agreed to provide plaintiffs and the Court with representative contracts, which have now been made part of the record. Pursuant to Fed.R. Civ.P. 12(b), the instant motion to dismiss will be treated as a motion for summary judgment since all parties are on notice that materials outside the pleadings is being considered.

6. *See, e.g., Lawrence v. Fox,* 20 N.Y. 268 (1859); *Kornblut v. Chevron Oil Co.,* 62 A.D.2d 831, 407 N.Y.S.2d 498 (2d Dept.1978), *aff'd,* 48 N.Y.2d 853, 424 N.Y.S.2d 429, 400 N.E.2d 368 (1979).

7. 662 F.2d 120 (2d Cir.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982).

8. 422 U.S. at 78, 95 S.Ct. at 2088 (quoting *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied in *Cort* ).

9. 422 U.S. at 78, 95 S.Ct. at 2088.

scheme to imply such a remedy for the plaintiff;"[10] and fourth, "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"[11]

*Davis* held that although section 503 "was generally intended to benefit handicapped persons," the statute was not intended to create rights enforceable by individual victims of discrimination.[12] The Court emphasized that the language of section 503 creates a duty on the part of the federal government to obtain affirmative-action pledges in its contracts with employers, rather than a right on the part of individuals to obtain employment. The Court also examined the legislative history and concluded that it did not support the conclusion that private litigants were intended to be granted a privately enforceable right under the statute. Moreover, the Court held that implication of a private remedy would be inconsistent with the "rather complete administrative scheme" which is provided in the statute and implementing regulations.[13]

▮▮▮▮ Of course, plaintiffs' claim as third-party beneficiaries of contracts containing the assurances required by section 503 is conceptually distinct from a claim based directly on the statute. As a practical matter, however, the considerations determining the validity of the former overlap to a substantial extent those determin-

ing the validity of the latter. Third-party beneficiary status may be inferred only when the parties intended to confer a direct benefit on the third party in contracting with each other.[14] In cases in which a contract has been executed in connection with a legislative scheme, it is appropriate to consult the legislative history in determining the parties' intent.[15] *Davis* rejected the argument that the legislative history of section 503 evidences an intent by Congress to create a privately enforceable remedy, and it is because of section 503's requirements that the contract provisions at issue here were included in the contracts. In short, although the language of the contracts, viewed in isolation, may well suggest that handicapped persons were intended beneficiaries of the contracts, such an interpretation would be inconsistent with the conclusion in *Davis* that section 503 was not intended to create a private right for victims of discrimination.[16]

Plaintiffs argue that under *Owens v. Haas*,[17] another Second Circuit decision, the question whether a party may sue as a third-party beneficiary of a contract is independent of the question whether a private right of action exists under the statute pursuant to which the contract was executed. In *Owens*, a federal prisoner sued county prison officials and the county itself based on a severe beating he had received while housed at the county prison pursuant to a contract between the federal government and the county. Among the theories

---

**10.** *Id.*

**11.** *Id.*

**12.** 662 F.2d at 122.

**13.** 662 F.2d at 126. As to the fourth *Cort* factor, the Court acknowledged that "discrimination against the disabled has not been a matter traditionally relegated to state law," but held that this factor was outweighed by the Court's conclusions on the other three factors. *Id.* at 127.

**14.** *See,* in addition to cases cited at note 6, *supra, Westhampton House Inc. v. Carey,* 506 F.Supp. 215 (E.D.N.Y.1980).

**15.** *See, e.g., Holbrook v. Pitt,* 643 F.2d 1261, 1271 n. 18 (7th Cir.1981); *Euresti v. Stenner,* 458 F.2d 1115 (10th Cir.1972); *see generally* Block, *En-*

*forcement of Title VI Compliance Agreements by Third Party Beneficiaries,* 18 HARV.C.R.–C.L.L. REV. 1, 31–34 (1983).

**16.** Several of the cases relied upon by plaintiffs held that a federal contract bestowed third-party rights on the plaintiff *and* that the statute under which the contract was executed created a private right of action. *See, e.g., Euresti v. Stenner, supra; Local Division No. 714, Amalgamated Transit Union v. Greater Portland Transit District,* 589 F.2d 1, 13–14 (1st Cir.1978). Others, decided prior to *Cort v. Ash, supra,* employ what is essentially a standing analysis and appear to hold that the statute in question creates a private right. *See Bossier Parish School Board v. Lemon,* 370 F.2d 847, 852 (5th Cir.1967).

**17.** 601 F.2d 1242 (2d Cir.); *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

of recovery advanced by the plaintiff was the claim that 18 U.S.C. § 4002 (1976), which authorizes the United States to contract with local authorities for the imprisonment of federal prisoners, creates a private right of action for prisoners injured while in local custody, and the claim that the plaintiff was a third-party beneficiary of the contract executed under this authority. The Court rejected the argument that a private right of action existed under the statute, but held that the complaint stated "what may be a valid claim as a beneficiary of the contract".[18]

It is true that the outcome which we believe *Davis* mandates for plaintiffs' third-party claim may be at odds with the outcome suggested by *Owens*. A possible ground for distinguishing the two cases exists, however, in *Owens'* reliance on the fact that the United States owes a duty of care to federal prisoners independent of the contract and statute at issue there:

> "Owens' claim as an intended beneficiary is buttressed by the fact that the United States owes him some duty of protection.... Though the United States cannot be held liable for the negligence of the county under *Logue v. United States* [412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973) ] ... it still can be held liable for its own negligence, ... and this duty exists before the United States contracts

with local authorities to take the prisoners. Therefore, it would appear likely that the prisoners can claim third party beneficiary status as ones to whom a duty is owed." [19]

■ Even if we were to deem this distinction unpersuasive, however, we would view the question presented here as more directly controlled by *Davis* than by *Owens*. *Davis* deals directly with the specific questions of legislative history and Congressional intent as to section 503 which must be considered in determining whether plaintiffs' third-party beneficiary claim is valid. To permit plaintiffs to proceed on this theory would, in our view, require us to ignore the conclusions reached in *Davis*.[20] Accordingly, defendants' motion to dismiss plaintiffs' first cause of action is granted.[21]

## II.

Plaintiffs also assert a claim under section 504 of the Act, which prohibits discrimination against handicapped persons in "any program or activity receiving Federal financial assistance.[22] This section concededly provides a private right of action.[23] However, under the Court of Appeals' holding in *United States v. Cabrini Medical Center*,[24] an employer cannot be held liable unless a primary purpose of the federal assistance is to provide employment.[25] Con

---

18. 601 F.2d at 1251.

19. 601 F.2d at 1250–51 (citations omitted).

20. *See also Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980) (no private right of action exists under § 503; question of possible third-party beneficiary claim not presented but if it were "we would also need to consider whether implication of a third-party beneficiary claim turns on the same considerations as implication of a private cause of action," *id.* at 1079 n. 5).

21. We have not taken any position on whether federal common law or New York law should be applied in determining whether there are third-party beneficiaries here, since we are aware of no substantive difference between the two, and the question of this Court's jurisdiction over the claim is not at issue in the present posture of the case.

22. Section 504 states, in relevant part:
"No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..."

23. *See Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977).

24. 639 F.2d 908 (2d Cir.1981).

25. *Cabrini* held that this requirement, which is set forth in Section 604 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–3 (1976), is applicable to section 504 of the Rehabilitation Act because section 505(a)(2) of the Rehabilitation Act provides that the remedies available under the Rehabilitation Act are those available under Title VI.

Ed contends that plaintiffs' section 504 claim should be dismissed because the record shows that the specific position for which Chaplin applied, customer field representative, was not funded by federal money at the time of her job application. Plaintiffs move to compel Con Ed to submit to deposition through an official who can describe, *inter alia,* the use to which federal money has been and is being put in Con Ed's operations, the relation between the duties of a customer field representative and those of other personnel supported by federal funds, and the general relationship between the federal funds received by Con Ed and the discrimination alleged.

Plaintiffs are entitled to the discovery they seek. The law remains in considerable flux as to how the program-specific requirements of section 504 and similar statutes should be interpreted.[26] For example, some courts have held that the receipt of non-earmarked federal assistance may, in appropriate circumstances, render an entire institution a "program" for the purposes of federal discrimination law.[27] Other courts have held that a remedy may be sought where a discriminatory program does not directly receive federal funds if the program is benefitted indirectly by federal financial assistance,[28] or if the discriminatory program affects activities which do receive federal funding.[29] We intimate no view as to the proper interpretation of the program-specificity requirement, but merely hold that plaintiffs are entitled to obtain as complete a record as possible before being required to respond to the argument that they have demonstrated an insufficient nexus between the funding received by Con Ed and the position for which Chaplin was rejected.

Con Ed's motion to dismiss plaintiffs' breach of contract claim is granted. Con Ed's motion to dismiss the section 504 claim is denied without prejudice. Plaintiffs' motion to compel Con Ed to submit to deposition is granted.[30]

It is so ordered.

---

**26.** In *North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), the Supreme Court specifically reserved decision on how "program" should be defined for the purposes of determining "program-specificity" under Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 *et seq.,* whose relevant language is virtually identical to that of § 504 of the Rehabilitation Act. 456 U.S. at 535–40, 102 S.Ct. at 1925–1926.

**27.** *E.g., Grove City College v. Bell,* 687 F.2d 684 (3rd Cir.1982), *cert. granted,* 411 U.S. 947, 93 S.Ct. 1921, 36 L.Ed.2d 406 (1983) (Title IX); *Le Strange v. Consolidated Rail Corp.,* 687 F.2d 767 (3rd Cir.1982), *cert. granted,* — U.S. —, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983) (concurring opinion of Adams, J.) (§ 504). *Cf. Hillsdale College v. Department of Health,* 696 F.2d 418 (6th Cir.1982), *petition for cert. filed,* 52 U.S. L.W. 3069 (U.S. Mar. 16, 1983) (where the only federal assistance received is federal loans to students, only the student loan program is the "program" under Title IX).

**28.** *See Haffer v. Temple University,* 688 F.2d 14 (3rd Cir.1982) (Title IX); *Poole v. South Plainfield Board of Education,* 490 F.Supp. 948 (D.N. J.1980) (§ 504).

**29.** *Iron Arrow Honor Society v. Heckler,* 702 F.2d 549 (5th Cir.1983), *vacated as moot,* — U.S. —, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) (Title IX). *See also United States v. Baylor University Medical Center,* 564 F.Supp. 1495 (N.D. Tex.1983) (§ 504).

**30.** Con Ed also seeks dismissal of the complaint as to the individual defendants insofar as they are named in their individual capacities. Decision on this issue is reserved since the parties' memoranda do not make clear their positions on this issue.