OPINION OF THE COURT
Arthur B. Curran, J.
This action arises from the death of plaintiff’s husband on June 2, 1983. The decedent was employed as a superintendent in the County of Steuben Highway Department. The decedent was a member of the Civil Service Employees Association, Inc. (hereinafter CSEA, Inc.), and the Steuben Unit of Steuben County Local 851 of CSEA, Inc. (hereinafter the Unit). Plaintiff has alleged that her husband’s death resulted from an on-the-job accident involving equipment owned and maintained by the County of Steuben.
*884 Defendants now seek an order dismissing the action on the grounds that a documentary defense exists, the suit is untimely and barred by the Statute of Limitations, and the complaint fails to state a cause of action as against either CSEA, Inc., or the Unit.
Plaintiff has alleged two separate causes of action in her complaint. The first cause of action alleges that both CSEA, Inc. and the Unit breached their duties to the decedent in that they did not provide a safe place for decedent to work. The second cause of action, against CSEA, Inc., alone, is based upon a collective bargaining agreement negotiated by CSEA, Inc. of which article 38 provided for "safety and health maintenance.” Plaintiff contends that pursuant to article 38, CSEA, Inc. agreed that safety in the work place was a basic right of its employee members and that steps should be taken to insure the existence and exercise of said right. Thus, it is claimed that CSEA, Inc. failed in its duty to decedent by not requiring: (1) the licensing of crane operators employed by Steuben County; (2) inspection and maintenance of truck cranes, particularly the wire rope thereof; and (3) enforcement of SOSHA (New York State Occupational Safety and Health Act [Labor Law § 27 et seq.]).
STATUTE OF LIMITATIONS
National Labor Relations Act § 2 (2) (NLRA; USC § Í52 [2]) excludes the State and political subdivisions from the definition of "employer”. However, the courts in New York State have recognized a duty of fair representation on the part of public sector unions predicated on their role as exclusive bargaining representatives. In this area, the State law closely parallels the Federal rules as interpreted pursuant to the provisions of the NLRA. (See, Gosper v Faneher, 49 AD2d 674, affd 40 NY2d 867, cert denied 430 US 915; Menkes v City of New York, 91 AD2d 654, 655; De Cherro v Civil Serv. Employees Assn., 60 AD2d 743; Jackson v Regional Tr. Serv., 54 AD2d 305.)
The allegations of plaintiff’s complaint outline a chain of events which terminated, for determination of the Statute of Limitations, on June 2, 1983. Defendants submit that since the entirety of plaintiff’s action is based upon an alleged breach of the duty of fair representation by defendants, Federal law dictates that claims of unfair representation are governed by a six-month Statute of Limitations. In addition, *885 the pertinent Statute of Limitations period of six months attaches to plaintiffs suit, because the duty of fair representation is a creation of the United States Supreme Court and other Federal District Courts and should be applied by State courts in State actions.
Plaintiff contends that the relevant law is the New York State Taylor Law. (Civil Service Law art 14.) Plaintiffs position is that the Taylor Law does not appear to have any provision for a Statute of Limitations in an action against a public union by one of its members. Therefore, plaintiff argues that the appropriate Statute of Limitations would be either six years under CPLR 213, three years under CPLR 214, or two years under the Estates, Powers and Trusts Law.
The Taylor Law (Civil Service Law art 14) was enacted in order to provide public employees with similar rights and safeguards that have been afforded private employees under the NLRA. Civil Service Law § 200 defines the act’s statement of policy, to wit: "The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized, (c) encouraging such public employers and such employee organizations to agree upon procedures for resolving disputes, (d) creating a public employment relations board to assist in resolving disputes between public employees and public employers, and (e) continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition.”
Civil Service Law § 209-a states: "2. Improper employee * * * practices. It shall be an improper practice for an employee organization or its agents deliberately * * * (b) to refuse to negotiate collectively in good faith with a public employer, provided it is the duly recognized or certified representative of the employees of such employer.”
In applying this section, subdivision (3) makes fundamental distinctions between private and public employment. "3. * * * *886 [A]nd no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent.”
Since there is no dispute that plaintiffs deceased was a public employee and a member of a public union, the court will rely on the Civil Service Law in determining whether or not plaintiffs action was timely commenced, rather than the Statute of Limitations provided under the NLRA.
The regulations promulgated by the Public Employment Relations Board (PERB) under the Civil Service Law provide a procedure for filing a charge of improper practices with the director of public employment practices and representation. However, filing the charge is not mandatory and a four-month limitation period will only be applied if a party chooses to file its charge with the director. "[A] charge that any public employer or its agents, or any employee organization or its agents, has engaged in or is engaging in an improper practice may be filed with the director within four months thereof’ (4 NYCRR 204.1 [a] [1]; emphasis added).
Aside from the Rules and Regulations of the Department of Civil Service, there is no provision for a Statute of Limitations in a suit against a public union by one of its members. In order to determine whether a Statute of Limitations exists, it is necessary to examine the substance of the action. (Sears, Roebuck & Co. v Enco Assoc., 43 NY2d 389, 396.) If there is no other form of proceeding available for the resolution of the litigants’ claims, the six-year limitation of CPLR 213 (1) will then be applicable. (Solnick v Whalen, 49 NY2d 224.)
In the instant action it is agreed to by both parties that the plaintiffs cause of action accrued on June 2, 1983. The action was commenced by service upon Terry Miller on May 31, 1985, and by service upon Bernard Zwiank, the Executive Director of CSEA, Inc., on June 5, 1985.
The facts of the case before this court are different from a situation where the union fails to argue and/or substantiate a plaintiffs grievance. Here, the public employee died while employed by the County of Steuben. In addition to plaintiff, the deceased left three surviving minor children. Plaintiffs complaint alleges a cause of action for negligence which in itself normally carries a three-year Statute of Limitations. A reading of plaintiffs complaint shows that plaintiffs suit transcends the normal fair representation actions. To enforce a six-month Statute of Limitations in a tragedy such as befell *887 the plaintiffs deceased would be a travesty of justice. Likewise, to dismiss a matter on the basis of a technicality, without considering the underlying facts and circumstances, would be contrary to the principles of the American legal system.
There being no specific applicable Statute of Limitations in New York State governing the institution of an action which alleges the violation of a duty by a union to fairly represent the members of the bargaining unit it represents and also alleging causes of action based upon negligence for wrongful death, the court holds that a six-month Statute of Limitations will not apply to the facts of the instant case. Thus, defendants’ motion to dismiss the action on the ground that the suit is untimely is hereby denied.
DOCUMENTARY EVIDENCE
Pursuant to CPLR 3211 (a) (1) a party may move to dismiss a complaint and/or one or more causes of action asserted against said party, on the ground that a defense is founded upon documentary evidence.
The documentary evidence offered into this case consists of the 1982-1985 Operational Services Unit (OSU)ZState Contract and the agreement between the Unit and the County of Steuben.
Defendants explain that the documentary evidence establishes the necessary defense on the basis that the 1982-1985 OSU/State Contract is wholly irrelevant and inapplicable to the decedent and, therefore, offers no substantiation for any duty incumbent upon the defendants with respect to negligence and/or fair representation. Additionally, review of the contract between the Unit and the County of Steuben demonstrates the absence of any language with respect to safety in the work place, which is the subject matter of this action.
Plaintiff contends that it will be necessary for plaintiff to commence discovery proceedings to determine whether a joint safety and health maintenance committee was created pursuant to the said contract, at the local level which would include the County of Steuben and, to determine the scope of authority of such a local safety committee.
OSU/State Contract article 38 consists of the following:
"Safety and Health Maintenance
"§ 38.1 The State and CSEA hereby reaffirm that it is a *888 basic right of all employees to work in an environment that is as free from hazards and risks to their safety and health as is practicable.
"The State remains committed to providing safety and health standards for the protection of employees, providing and maintaining safe working conditions, and to initiating and maintaining operating practices that will safeguard employees, in order to reduce the potential of on-the-job injury and resulting workers’ compensation claims.
"§ 38.2 Safety and Health Maintenance Committee
"(a) There shall be a statewide safety and health maintenance committee consisting of six (6) representatives selected by CSEA * * * the State * * * and an impartial chairperson selected by the parties * * *
"(b) * * * The committee’s responsibilities may include but shall not be limited to:
"(1) Assessment of department and agency safety practices and development of plans for changes or improvements in safety and working conditions.
"§38.3 There shall be established such additional joint committees at such local and departmental levels as the Safety and Health Maintenance Committee deems to be appropriate. These local and departmental committees shall:
"(a) Consider such local and departmental safety matters as the Safety and Health Maintenance Committee shall determine to be appropriate, and to resolve such matters at the lowest appropriate level;
"(b) Develop plans for implementing such procedural changes as the Safety and Health Maintenance Committee finds to be appropriate in fostering improved safety and sanitary conditions;
"(c) Develop plans for implementing agreed-upon recommendations involving purchase of safety-related materials and equipment within budgetary allocations available;
"(d) Review deficiencies in employee safety, develop proposals for change and review those changes implemented pursuant to said proposals. These committees may develop methods to report deficiencies, review such reports, determine degree of resolution and make special investigation of unique problem areas.”
The defense of documentary evidence is relatively new and seldom used to dismiss an action in New York State. (See, *889 Siegel, NY Prac §259, defense based on "documentary evidence”.) OSU/State Contract article 38 contains references to local level safety committee. The affidavits of Joseph McDermott and Bruch Wyngard state, respectively, that the contract by its terms is specifically intended to benefit only State employees and no one else. Consequently, the "local” reference within that contract relates solely to local departments of State entities and the employees therein.
The court finds that the conclusions drawn by defendants are premature at this time and should be explored more fully through a process of discovery. Dismissal based upon documentary evidence is analogous to the harsh consequences of a summary judgment. Both motions deprive a party of its day in court. In the case before the bar, plaintiff has requested an alternative to a dismissal of plaintiff’s matter by permitting plaintiff to commence discovery proceedings. At this juncture of the suit against defendants, the court is inclined to agree with plaintiff. Therefore, defendants’ motion to dismiss plaintiff’s complaint due to the lack of any substantive basis as illustrated by the supporting documents is denied, without prejudice to renew upon the completion of discovery proceedings and depositions.
CAUSES OF ACTION
A. First Cause of Action
Plaintiff’s allegations in the first cause of action sound in terms of negligence. Plaintiff alleges that defendants "knew or should have known” and "failure, omission and neglect”.
Applying Civil Service Law § 209-a (3) in determining whether or not a public employee can sue a public employees’ union under a common-law negligence theory.
The court in the case of Stempien v Civil Serv. Employees Assn. (91 AD2d 864), citing the Court of Appeals decision of Parker v Borock (5 NY2d 156), held that a plaintiff could proceed against a public union on a theory of common-law negligence. The court ruled that a suit in negligence is possible even if a plaintiff failed to succeed on a theory of breach of "duty of fair representation” against CSEA, Inc.
In order to sustain an action against a public union for "fair representation”, a plaintiff must allege and prove the existence of: bad faith; arbitrariness; or discrimination on the part of the union. (See, Vaca v Sipes, 386 US 171; Stempien v Civil *890 Serv. Employees Assn., supra; Matter of Hoffman v Board of Educ., 84 AD2d 840.)
A motion to dismiss pursuant to CPLR 3211 (a) (7) is a drastic remedy that should only be granted where the court is positive that there are no factual issues to be resolved and no causes of action pleaded.
Plaintiffs complaint sufficiently alleges theories of common-law negligence and breach of a fiduciary duty.
Whether or not defendants failed, omitted and/or neglected to provide for plaintiffs decedent’s safety is a question of fact to be resolved by the trier of fact and not by a motion to dismiss for failure to state a cause of action. Similarly, whether the actions and omissions of the CSEA, Inc., and the Unit towards its members in failing to take any interest in safety constituted an action that was arbitrary, discriminatory and/or taken in bad faith are evidentiary questions to be determined at trial and certainly do not support a dismissal for failure to state a cause of action.
The court does not determine whether or not the plaintiffs evidence will support a cause of action. In a CPLR 3211 (a) (7) motion, the court’s concern is whether or not the complaint has sufficiently pleaded a cause of action. As the court noted in Rovello v Orofino Realty Co. (40 NY2d 633), if defendant’s evidentiary affidavits establish conclusively that no cause of action exists, then the complaint may be dismissed; however, such instances will seldom, if ever, occur.
Thus, the court denies defendants’ motion to dismiss the first cause of action as against both defendants pursuant to CPLR 3211 (a) (7) on the ground that the complaint fails to state any viable cause of action against either the Unit or CSEA, Inc.
B. Second Cause of Action
Plaintiffs second cause of action alleges that the decedent was a beneficiary of an alleged third-party contract entered into between CSEA, Inc. and the State of New York. Plaintiff contends that the contract imposed a duty upon CSEA, Inc. to ensure the safety of the deceased’s work place.
The New York Court of Appeals has held that a third party may be the beneficiary of a public contract. (Kornblut v Chevron Oil Co., 62 AD2d 831, affd 45 NY2d 853.) In Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314), *891 the appeals court ruled that a third party may be the beneficiary of a public contract by establishing the following:
1. The existence of a valid and binding contract between other parties;
2. That the contract was intended for his benefit;
3. That the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost. (Burns Jackson Miller Summit & Spitzer v Lindner, supra, at p 336.)
Plaintiff’s complaint alleges that: (1) A valid and binding contract was in existence between the State of New York and the Operational Services Unit; (2) The contract reaffirmed that it is a basic right of all employees to work in a safe environment, and to that end provided for the establishment of joint safety and health maintenance committees at the local level; and (3) the decedent, had the contract been enforced in the County of Steuben, would have enjoyed an immediate direct benefit by having not been subjected to the dangerous condition that took his life.
Based upon the plaintiff’s complaint, the court decides that it is premature to rule on a motion to dismiss whether or not the express language of the 1982-1985 agreement between the State of New York and the State-wide Collective Bargaining Unit represented by CSEA, Inc. contains evidence of any intent to benefit a third party, to wit: county employees such as the decedent.
Perhaps discovery will shed some light on the question of whether the agreement clearly limits its coverage to State employees. In any event, the court is not in the position, at this time, to grant a motion to dismiss for failure to state a cause of action with regard to defendants’ contention that the decedent was not a third-party beneficiary of the agreement.
CSEA, Inc.’s status as an employee organization and the decedent’s membership therein are not controverted. However, plaintiff argues that a local is an integral part of CSEA and under the control thereof. As such, a local is not a separate entity but is subservient to CSEA, Inc. Conversely, defendants claim that the CSEA, Inc. locals and units are unincorporated associations under the General Associations Law of New York State. Hence, they are to be considered as separate legal entities.
Defendants propose that the New York Civil Service Law *892 article 14 (Taylor Law) is clear, in that any individual employers will collectively bargain with separate and independent units of employees for purposes of employment contracts and grievance administration.
However, the constitution of CSEA, Inc. provides in article VII, § 2 that the President of CSEA, Inc., "May place a local in trusteeship for any reason deemed good and sufficient by the president upon notice and an opportunity to be heard.” Thus, an issue of fact is created as to whether the Unit is responsible at the local level.
The answer to the issues raised in plaintiffs second cause of action raised triable questions of fact. As aforestated, discovery proceedings, which may or may not support defendants’ position, have not been commenced. Therefore, upon the allegations and issues propounded by plaintiffs complaint, the court denies the defendants’ motion to dismiss plaintiffs second cause of action, for failure to state a cause of action. The court’s denial shall be without prejudice to renew either at the completion of discovery proceedings or at the trial of this matter.